## KAPLAN et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 2782.

Circuit Court of Appeals, First Circuit.
July 24, 1933.

Allison L. H. Newton, of Boston, Mass. (Nutter, McClennen & Fish, of Boston, Mass., on the brief), for petitioners for review.

J. P. Jackson, Sp. Asst. to Atty. Gen. (Sewall Key and Francis H. Horan, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for Commissioner of Internal Revenue.

**402**

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

Kaplan made a written declaration of trust and transferred to himself as trustee under it certain personal property. By the terms of the instrument, the income of the trust property was to be paid to Kaplan's wife for her life, with a reversion of the beneficial interest to him if he outlived her, and if he did not, then on her death to his children. The declaration also permitted the trustee to accumulate "a reasonable portion of the income," the accumulation to be payable at the discretion of the trustee to the person or persons who at the time of payment were entitled to the income of the trust. The commissioner held that, as the accumulation clause gave Kaplan as trustee the right to accumulate income, which might eventually come to him in case he survived his wife, the provisions of the Revenue Act of 1924, § 219 (h), 26 USCA § 960 note, applied, and that the entire income of the trust was taxable to Kaplan personally. The Board of Tax Appeals affirmed the commissioner's decision; and the case is here on review.

■ The statute reads as follows: "Where any part of the income of a trust may, in the discretion of the grantor of the trust, either alone or in conjunction with any person not a beneficiary of the trust, be distributed to the grantor or be held or accumulated for future distribution to him * * * such part of the income of the trust shall be included in computing the net income of the grantor." Revenue Act 1924, § 219 (h). The trust in question was established before the enactment of this statute.

The first point made for the petitioner is that the Kaplan trust is not within the terms of the statute. This depends on whether the expression in the statute "may, in the discretion of the grantor of the trust * * * be held or accumulated for future distribution to him" refers to the accumulation of income which, under certain contingencies, *may* in the future be paid to the grantor, or to the accumulation of income which *must* in the future come to the grantor. This provision was intended, as its legislative history clearly shows, as a protection to the government against evasion of income taxes, especially surtaxes, by means of trusts whereby the grantor, although parting with the legal control of the trust property, reserved a practical control over the income of it which could, in point of fact, be exercised for his own benefit. As Kaplan named himself trustee, the large discretion given in the trust instrument to the trustee as to the accumulation and payment of income is attributable to him personally. By the terms of the trust that discretion can be exercised for his own possible benefit, within wide limits. We see no occasion for refinement of construction against the government. We think the statute means that if under any circumstances or contingencies any part of the accumulated income might inure to the benefit of the grantor such portion of the income is taxable to him.

■ Kaplan is under the obligations imposed upon the trustee by the trust instrument. Among these is that he shall exercise his powers as trustee with due regard to the rights and interests of the immediate beneficiary. Garvey v. Garvey, 150 Mass. 185, 22 N. E. 889; Gardiner v. Rogers, 267 Mass. 274, 166 N. E. 763. The large discretion given to the trustee diminishes these rights, but it does not extinguish them. Applying the law as above stated, the portion of the income properly taxable to Kaplan personally was the entire income minus that portion of it which constituted the irreducible minimum of which the trustee had no right to deprive Mrs. Kaplan. The commissioner held as above stated that the *entire* income was taxable to Kaplan personally. In this he fell into error, as did the Board of Tax Appeals in affirming his decision. There having been no determination of the amount taxable to Kaplan under the law as above stated, the matter must go back for further hearing on this point. There may be difficulty in making the apportionment, but the statute requires it to be done. It deals with amounts which rest "in the discretion of the grantor," etc.; and it operates only on "such part of the income of the trust" as lies within that discretion.

We see nothing unconstitutional in the statute as above construed. We are dealing only with income, not paid over to Mrs. Kaplan, but accumulated and retained by the trustee for future payment according to his discretion—possibly to Mrs. Kaplan, possibly to the grantor should he survive her, possibly to the ultimate beneficiaries. The grantor is not wholly divested of such income; it may eventually come to him. The statutory provision that under such circumstances it shall remain taxable to him seems to us by no means so arbitrary and unreasonable as to be unconstitutional. See Corliss v. Bowers, 281 U. S. 376, 50 S. Ct. 336, 74 L. Ed. 916.

■ The other point which has been argued relates to a loss which Kaplan sustained on

certain stock in the Eliot Mills, Inc., the question being whether it was a capital loss or an income loss. The commissioner held it to be the former; and the Board of Tax Appeals affirmed his holding. The transaction was that in October, 1919, Kaplan made an agreement with the Eliot Mills, Inc., and one Finkel, whereby he paid the Eliot Mills, Inc., $25,000 and received in return 20 per cent. of its common stock. The agreement further provided that, at the expiration of five years, upon seasonable request from Kaplan, the $25,000, plus one-fifth of the net earnings of the Mills during that period, or minus one-fifth of their net loss, would be returned to him. It is unnecessary to go into the details of the arrangement. Kaplan gave notice of withdrawal as of October 1, 1924. It was determined that he was chargeable with $20,-000 loss. Consequently, he received back only $5,000 of his original investment. He contends that the difference, $20,000, is an *income* loss in that year. The basis of this contention is that the contract in question made him an associate with the Eliot Mills, Inc., and Finkel in a joint venture, into which he put $25,-000; that the stock was transferred to him as "mere security for the return of his contribution to this enterprise." The government contends that it was a purchase of stock by Kaplan with an agreement on the part of the sellers to repurchase it from him as stated in the contract, and that, as the stock was held by Kaplan for over two years, the loss on it was a capital transaction.

The arrangement was built around a direct and completed transfer of stock from the Mills to Kaplan. While he held the stock, he had all the rights of any stockholder, except as restricted by his contract with the Mills and Finkel. By that contract he had the right to require the other parties to repurchase the stock on certain terms, and they had the option to repurchase it at their election on similar terms. The price at which it was to be put or called did not depend on the market price of the stock itself, but upon the profits or losses of the corporation. Very possibly there was no general market for the stock. The transaction was certainly not a loan. There was no personal liability on the part of the Mills or Finkel to Kaplan, and no provision for interest. No such contention is made. There are great difficulties in regarding it as constituting a partnership or joint adventure between the Mills (a corporation), Finkel, and Kaplan; clearly no separate entity was created by it, and it has no characteristics of a joint adventure. The purchase evidently was to furnish additional capital

to the Mills, but without imposing any direct liability on the corporation to repay it. The arrangement is referred to in the agreement between Kaplan, the Mills, and Finkel as an *investment* by Kaplan in the Eliot Mills, Inc. While neither view is free from difficulties, we think the most satisfactory interpretation of the arrangement is to regard it as an investment, i. e., as a purchase of stock with the right of resale. It follows that the decision of the Board of Tax Appeals was correct on this point.

The order of the Board of Tax Appeals is vacated, and the case is remanded to that board for further proceedings not inconsistent with this opinion.