**HELVERING, Commissioner of Internal Revenue, v. EVANS.**

**HELVERING, Commissioner of Internal Revenue, v. MOREHEAD.**

Nos. 7731, 7732.

Circuit Court of Appeals, Third Circuit.

Argued Feb. 2, 1942.

Decided March 2, 1942.

L. W. *Post*, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and Gerald L. Wallace, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

James. S. Y. Ivins, of Washington, D. C., for respondents.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

These two cases involve the same question. The asserted liability of each taxpayer arises out of the same transaction and the sole difference is that, if the Commissioner's position is upheld, one is liable for a deficiency for one year only, the other for three years.

The liability asserted is claimed under Section 166[1] and 167[2] of the Revenue Acts of 1934 and 1936 for income accumulated in the respective trusts. The Commissioner also argues for the applicability of Section 22(a), 26 U.S.C.A. Int.Rev. Code, § 22(a).

The essential facts are not in dispute. A testator left his real and personal property to his widow for life with full power to dispose thereof. There were provisions for the shifting of interests in the event of the widow's remarriage, unimportant for this case because that contingency did not occur. Upon the death of the widow all of the decedent's estate then undisposed of was to be distributed in equal shares to his two daughters, the taxpayers in these cases. The principal asset of the decedent's estate consisted of 500 shares of stock of the Journal Company. In 1931 the decedent's widow, Susan Boyd, mother of the taxpayers, following conferences with members of the family and her attorneys, transferred to each of the daughters all her right, title and interest in 166 shares of

---

[1] "Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

"(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

"(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor." 26 U.S.C.A.Int.Rev.Code, § 166.

[2] "(a) Where any part of the income of a trust—

"(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition

of such part of the income may be, held or accumulated for future distribution to the grantor; or

"(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; or

\* \* \* \* \* \*

then such part of the income of the trust shall be included in computing the net income of the grantor.

"(b) As used in this section the term 'in the discretion of the grantor' means 'in the discretion of the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of the part of the income in question.'" 26 U.S.C.A.Int.Rev. Code, § 167.

the Journal Company stock. Pursuant to the understanding with their mother theretofore had, the two taxpayers, each as grantor, executed a separate trust agreement whereby each, as owner, transferred 166 shares of the Journal Company stock to the Wilmington Trust Company, a Delaware corporation, as trustee. By the terms of the deed the corporate trustee is given broad powers to manage, invest and reinvest the corpus and accumulate income, but may not dispose of the Journal Company stock held in the trust except upon the written consent of Susan Boyd during her lifetime. The corporate trustee, so long as it holds any shares of Journal Company stock, is directed to accumulate annually and add to the corpus of the trust the amount of income in excess of $20,-000 until the accumulations aggregate $1,-000,000. But the annual accumulations are not to exceed more than one-third of the net income in any one year. The settlor, during her lifetime, is given the right to direct the trustee to set aside certain portions of the trust fund as "shares" for the benefit of her issue.

The controversy in this case turns chiefly on Section 10 of the trust agreement. It provides as follows:

"10. If, during the continuance of this trust, the income currently payable hereunder to or for the benefit of any beneficiary, together with his or her income from other sources, should be insufficient to properly provide for the support, maintenance, benefit and/or education of such beneficiary and his or her dependents, Trustee is authorized and empowered, in its sole discretion, to pay over unto or for the benefit of such beneficiary so much of the principal of any part or the whole of the trust fund from which such beneficiary may then be receiving the income or the benefit thereof, as may from time to time be required to make up such insufficiency of income. The receipt of any beneficiary for or evidence of the application to the benefit of any beneficiary of any payment made in conformity with the foregoing provision shall fully discharge Trustee from any further liability in connection therewith."

Since the creation of the trust the trustee has made no distribution to either of the petitioners under the provisions of the above quoted paragraph, nor have either of the taxpayers directed the division of the trust fund into shares. The question for decision in this case is whether the taxpayers are accountable for the income accumulated in the respective trusts. The Board of Tax Appeals (42 B.T.A. 851) held that they were not and the Commissioner brings the cases to this court.

We conclude that the facts of these cases bring them within Sections 166 and 167. The trustee itself has no substantial adverse interest in the disposition of the corpus or income, Morton v. Commissioner of Internal Revenue, 7 Cir., 1940, 109 F.2d 47, and the trustee certainly does have, under Section 10 of the trust instrument which has been quoted above, discretion almost without limit, to distribute the accumulations to the grantors. The respondents' argument stresses the evidence of an officer of the trustee corporation that in the few cases during the last decade in which it has advanced principal from trusts under this provision it has done so only upon an "overwhelming showing of dire want." We do not consider that such practice, granting it to exist, changes the use of the term "benefit" from its common as well as dictionary concept as meaning whatever promotes welfare; advantage, profit. See Kaplan et al. v. Commissioner of Internal Revenue, 1 Cir., 1933, 66 F.2d 401; Sharp v. Commissioner of Internal Revenue, 1940, 42 B.T.A. 336.

It is found as a fact that taxpayers did have, during the taxable years in question, separate property and income other than that received from the trust. It is also found that: "At no time from the creation of the trusts to the end of the year 1936 has the income of either of petitioners, by distributions of income from the trusts and from other sources, been insufficient to properly provide for her support, maintenance, benefit, and/or education, or for that of her dependents." But the criterion by which the trustee was to exercise its discretion with regard to payment of the corpus of the fund to the grantors was the insufficiency of the income from the trust and other sources to provide for the "support, maintenance, benefit and/or education of such beneficiary and his or her dependents". The fact that the trustee was not called upon to exercise its discretion to advance money for the grantors' benefit does not belie the continuous existence of the power, had there been occasion to use it. "Section 167 is

not concerned with what *is* done under a trust agreement but with what *might be* done thereunder. The controlling statutory consideration is the existence of the described 'discretion,' not the way in which that discretion is actually exercised." Rollins v. Helvering, 8 Cir., 1937, 92 F.2d 390, 395, certiorari denied, 1937, 302 U.S. 763, 58 S.Ct. 409, 410, 82 L.Ed. 592, 593. See White v. Higgins, 1 Cir., 1940, 116 F.2d 312, 317. As the Board itself has said in a case where the trustees had not exercised their discretion, "There was * * * nothing to prevent the trustees here from exercising their discretion and distributing the capital gains to. petitioner. She is therefore taxable in respect of these capital gains under section 167(a) (2) * * *". Sharp v. Commissioner of Internal Revenue, supra, 42 B.T.A. at page 341; Kent v. Rothensies, 3 Cir., 1941, 120 F.2d 476, 479.

The case is something like that of Wenger v. Commissioner of Internal Revenue, 1940, 42 B.T.A. 225, at page 226. There the terms of the trust provided for distribution of income in the event of "any accident, sickness, calamity, misfortune, adversity, bereavement or loss, financially or otherwise, shall visit * * * the maker * * *". In that case the provisions of Sections 166 and 167 were held applicable. The provisions of the trust there did not, as they do here, require the trustee to take into account the income of the grantor from other sources. On the other hand, we do not consider the language there, broad though it is, to go as far as it does in the instant case where the trustee's decision as to "benefit" to the grantor or her dependents from the distribution of the corpus is the only limitation imposed. The Wenger case presents stronger facts against the taxpayer than those under consideration here.

Argument is made on behalf of the taxpayers that their mother, who thought up and arranged for the plan of the trust settlement, and not themselves, was the real grantor. We do not believe this to be true in fact or law. The mother gave to the daughters, her agents, her life interest which was subject to being divested if the mother chose to sell these shares or any other asset of the decedent's estate which was in her hands. But she did not do so. Instead she, in effect, offered to give to the daughters her interest in certain of the shares if they, in turn, agreed to dispose of the shares in a certain way. This they did. It is no less their act because they and their children benefited thereby. The mother was free to grant or not to grant; they were free to accept her offer or not to do so. We hold the transaction to be just what it was on its face, a deed in trust by the daughters to the trustee.

There is no suggestion in this case that the trust device has been used as a basis for tax evasion. It is found as a fact that the mother had over a period of time considered the advisability of placing a portion of the shares of the Journal Company in trust for the benefit of the protection of her daughters and their children, a perfectly legitimate object. Such purpose does not, of course, exempt the transaction from the incidence of the tax law, if it falls within it. We hold the provisions of the accumulations directed by the terms of the trust are taxable under the statutes quoted because we believe that the words of the statute and the terms of this trust require that result. ·

Our view of the case makes it unnecessary to consider the applicability of Section 22(a); likewise the validity of the regulations issued covering Sections 166 and 167. ·

The decisions of the Board of Tax Appeals are set aside and the cases remanded for further proceedings consistent with this opinion.