NEWTON TRUST CO. et al. v. COMMISSIONER OF INTERNAL REVENUE.

COMMISSIONER OF INTERNAL REVENUE v. NEWTON TRUST CO. et al.

Nos. 4177, 4184.

Circuit Court of Appeals, First Circuit.

March 5, 1947.

David Burstein, of Boston, Mass. (John T. Powell, of Boston, Mass., on the brief), for Newton Trust Co., et al.

Carlton Fox, Sp. Asst. to the Atty. Gen. (Sewall Key, Acting Asst. Atty. Gen., and A. F. Prescott and Hilbert P. Zarky, Sp. Assts. to the Atty. Gen., on the brief), for Commissioner.

Before MAGRUDER, MAHONEY and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

This case involves cross appeals from a redetermination by the Tax Court of estate tax deficiencies. Two questions are presented: (1) whether certain bequests to charities in the will of decedent are sufficiently ascertainable to be allowed as deductions under Internal Revenue Code, § 812(d), 26 U.S.C.A. Int.Rev.Code, § 812(d), and (2), the measure of the value of the property includible in the gross estate by reason of the exercise by decedent in his will of two powers of appointment.

Nathan P. Cutler, Sr., decedent's father, created an inter vivos trust in 1926, the income of which was payable to himself for life, and on his death the net income was payable in equal shares to his two children, Nathan P. Cutler, Jr., the decedent, and his brother, William H. Cutler, as long as they should live. Upon the death of one of them, that decedent's portion of the income was to go according to the will of that deceased life tenant. On the death of the survivor of the two brothers, the corpus was to be divided into equal shares payable as each son appointed by will. Provisions were made for disposition in the event of default of appointment but they are not now pertinent.

After the father's death in 1931 the net income of the trust was paid in equal parts to the two sons. Nathan P. Cutler, Jr., whose estate is the subject of the present proceedings, died on September 10, 1940 survived by his brother William. The decedent devised and bequeathed to a trustee "all the rest and residue of my property, real or personal, of which I shall die seized or possessed, or to which at the time of my decease I shall be in any way entitled or over which I may have any power of appointment," in trust to pay the net income thereof "to or for the use and benefit" of his wife for life. The trustee was given a power "to make such payment or payments to or for the use and benefit of my said wife as it may in its sole discretion deem advisable." On the death of the wife the remainder, subject to certain specific bequests, was bequeathed to charity. The will empowered the trustee to mortgage, lease, or sell both real and personal property in the trust fund and provided that all decisions of the trustee made in good faith should be conclusive on all parties in interest.

After the death of decedent, one-half of the income from the father's trust was paid to the trustee under the decedent's will. At the time of decedent's death, his brother William's age was 68 years, 3.

months, and the wife's 67 years, 8 months. It has been conceded that the charitable organizations are of the type to which charitable bequests may be made and allowed as deductions under Internal Revenue Code, § 812(d).

The Commissioner disallowed any deduction for the charitable bequests on the ground that the trustee's power of invasion of the principal for the use and benefit of the wife of decedent made it impossible to determine with any degree of certainty what amounts would ultimately go to charity, and hence the value of such bequests was not presently ascertainable. The Commissioner also determined that the value of the one-half interest in the Cutler Sr. trust over which the decedent exercised the powers of appointment was $201,382.99. The Tax Court upheld the Commissioner on the disallowance of the amount of the charitable bequests; but found the value of the property passing under the powers of appointment to be the sum of the separate value of the life estate and the remainder, viz., $195,778.35. The Tax Court also made a finding that the wife did not file a disclaimer under the provisions of § 812(d), as amended.

Section 812(d)[1] of the Internal Revenue Code provides for a deduction from the gross estate of decedent of the amount of all bequests, legacies, devises, or transfers to charitable corporations. Treasury Regulations 105, § 81.44[2] requires that the charitable gift in trust have a "presently ascertainable" value in order to warrant the deduction; and § 81.46[3] provides that where a power of invasion is present the deduction will be limited to that portion of the principal which is exempt from the exercise of the power. The Supreme Court has upheld these regulations, which have since been somewhat amended, as appropriate implementations of the statute. Merchants Nat. Bank of Boston v. Commissioner, 1943, 320 U.S. 256, 260, 64 S.Ct. 108, 88 L.Ed. 35.

■ It would seem that a proper analysis of these powers of invasion cases in conformity with the statute and the regulations must rest on a consideration of two basic propositions. The first problem would concern the measurability of the possible exercise of the power in terms of a definitely ascertainable standard. When no calculable standard is present, no deduction should be allowed since the value of the charitable remainder cannot then be ascertained. If a fixed standard is ascertainable, then as the second step in any analysis it becomes necessary to examine the remoteness of in-

[1] I.R.C. § 812, 26 U.S.C.A. Int.Rev. Code, § 812.

"For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

(d) Transfers for public, charitable, and religious uses. The amount of all bequests, legacies, devises, or transfers * * * to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, * * * *."

[2] Regulations 105, § 81.44. "Transfers for Public, Charitable, Religious uses, etc. * * *

"If a trust is created for both a charitable and a private purpose, deduction may be taken of the value of the beneficial interest in favor of the former only insofar as such interest is presently ascertainable, and hence severable from the interest in favor of the private use. * * *"

[3] Regulations 105, § 81.46. "Conditional bequests.—

"If as of the date of decedent's death the transfer to charity is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that charity will not take is so remote as to be negligible. If an estate or interest has passed to or is vested in charity at the time of decedent's death and such right or interest would be defeated by the performance of some act or the happening of some event which appeared to have been highly improbable at the time of decedent's death, the deduction is allowable.

"If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of such power."

vasion, or the extent of possible invasion, in terms of the standard, to determine the likelihood that the charity will take and the value of what it will receive. See Paul, Federal Estate and Gift Taxation (1946 Supp.) p. 436.

Where the power of invasion is limited to the maintenance of the widow in her former station of life the standard is "fixed in fact and capable of being stated in definite terms of money." Ithaca Trust Co. v. United States, 1929, 279 U.S. 151, 154, 49 S.Ct. 291, 73 L.Ed. 647. But, on the other hand, where non-measurable sums may be expended from the corpus, the power of invasion is not restricted to a fixed standard and the value of the charitable remainder is not "presently ascertainable." Merchants Nat. Bank v. Commissioner, supra. Whether a particular power of invasion falls into one class or the other depends upon the terms of the power and the proper construction to be placed thereon by the law of the state which would have jurisdiction to construe the will or trust in question. Thus, the Ithaca case allowed invasion "necessary to suitably maintain her in as much comfort as she now enjoys." Similarly, where invasion was permitted "if in the judgment of the said trustee, the best interests of my sister should so require" and the trustee testified that in his judgment the best interests of the beneficiary was to maintain her according to her past standards of living, the deduction was allowed. Commissioner v. Robertson's Estate, 4 Cir., 1944, 141 F.2d 855, 856. The terms "comfort, maintenance and support" have also been held to provide a fixed standard under which the value of the charitable remainder is ascertainable and deductible. Lucas v. Mercantile Trust Co., 8 Cir., 1930, 43 F.2d 39, 40. See also Hartford-Connecticut Trust Co. v. Eaton, 2 Cir., 1929, 36 F.2d 710; First Nat. Bank of Birmingham, Ala. v. Snead, 5 Cir., 1928, 24 F.2d 186.

On the other hand a fixed standard has been found wanting where the terms used are vague and uncertain and do not restrict invasion to maintain a prior mode of living or to definitely ascertainable amounts. Thus, in the Merchants Nat. Bank case [320 U.S. 56, 260, 64 S.Ct. 110] the principal could have been used for the "comfort, support, maintenance, and/or happiness" of the widow, and in Industrial Trust Co. v. Commissioner, 1 Cir., 1945, 151 F.2d 592, 593, certiorari denied, 327 U.S. 788, 66 S.Ct. 807 for her "comfort and pleasure." Likewise "need or desire" of the life tenant has been held not limited to a prior mode of life or any other fixed and ascertainable standard. Gammons v. Hassett, 1 Cir., 1941, 121 F.2d 229, 230, certiorari denied 1941, 314 U.S. 673, 62 S. Ct. 136, 86 L.Ed. 539.

In our present case the Tax Court held that "use and benefit of my said wife" did not refer to the widow's previous standard of living and that no other standard of expenditure was prescribed in terms of which the possibility or extent of invasion could be appraised. We agree with this holding. "Use and benefit" considered conjunctively or disjunctively connote considerably more than the maintenance of a standard of living and to our mind payments for such a purpose or purposes could not lend themselves to predetermined measurement or a measurable standard. We do agree with the taxpayer's contention that the terms "desire", "happiness" and "pleasure" are of much broader import than "use and benefit", but the taxpayer's problem here is not solved by a comparison but rather he must show affirmatively that the words used indicate an objective standard ascertainable in money. Undoubtedly a court of equity would disallow certain expenditures from principal under the terms of this trust which expenditures might readily be allowed where the broader terms were used. But within the area of permissible principal invasions here, it is impossible to predetermine just how much would be expended for "use and benefit" or even to set a dollars and cents maximum. The term "benefit" has been said to mean "whatever promotes welfare; advantage, profit." See Helvering v. Evans, 3 Cir., 1942, 126 F.2d 270, 272, certiorari denied 1942, 317 U.S. 638, 63 S.Ct. 30, 87 L.Ed. 514; Stowell v. Stowell's Executor, 1887, 59 Vt. 494, 8 A. 738, 59 Am.St.Rep. 748. This alone should serve to point out the indefiniteness of the terms here employed. Granting that

this power of invasion does not bestow an unrestricted right to consume the principal, we are still unable to make more than an inaccurate guess at the extent of the power of invasion. Thus the need for an ascertainable standard becomes self-evident.

The Massachusetts cases cited to us do not seem to support the taxpayer's position. The two cases which construed "use and benefit" determined that a gift of all the testator's property to his wife for her "use and benefit" during life or until remarriage created only a life estate in the widow. Lewis v. Shattuck, 1899, 173 Mass. 486, 53 N.E. 912; Fuller v. Wilbur, 1898, 170 Mass. 506, 49 N.E. 916. As we said previously we agree with the taxpayer when it says that "use and benefit" imply limitations, but the difficulty remains—that payments for "use and benefit" are not susceptible of previously ascertainable measurement.

Since a standard for the power of invasion is not ascertainable in the instant case, no occasion exists for examining the possibility of invasion and the remoteness thereof. Without such a standard, any calculation of the possibility of invasion could only be highly conjectural. Thus this second question only becomes pertinent when the standard is found to exist.

The taxpayer makes a further argument in favor of the deductibility of the charitable remainder. Assuming that the power of invasion would be a power to invade the entire corpus, the taxpayer argues that no invasion of principal is permitted until the brother's death since under the terms of the father's will the decedent had no power over the corpus until that event occurred. In other words, he would grant that if the brother predeceased the widow, the widow's power of invasion would defeat the gift to charity and its deductibility; but if the widow should predecease the brother then the charity would get the remainder interest in toto. The taxpayer would have the actuarial value of the contingent charitable interest computed and as so computed be considered definitely ascertained and deductible. This argument was rejected by the Tax Court with this statement: "Wheth-

er the brother or the widow will die first is purely speculative and is not a matter upon which an actuarial computation for tax purposes can be made. Cf. Humes et al. v. United States, 1928, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667." The Tax Court likewise held, that under the powers given to the testamentary trustee, it could anticipate the receipt of principal upon the brother's death, and, by mortgage or sale of the right to receive the corpus upon the termination of the father's trust it could now provide the widow with funds over the amount of the income for her use and benefit by such indirect invasion of the principal prior to the death of the brother. We have some difficulty in accepting this latter argument of the Tax Court. It may well be that upon a proper construction of the terms of the decedent's will the trustee may have the power to hypothecate now the right to receive the corpus of the father's trust upon the brother's death and thus effectively diminish the remainder regardless of whether the widow or brother died first. On the other hand, it may be that a transferee could only realize on this interest if the brother predeceased the widow; in other words, the effectiveness of any exercise of the power of invasion would be contingent on the survivorship of the widow. Since the proper construction of the decedent's will and the father's trust is thus sufficiently in doubt we hesitate to place our decision on the same ground as the Tax Court and, therefore, we shall consider the taxpayer's argument.

We are inclined to agree with the result reached by the Tax Court but for a different reason. The taxpayer suggests that the point in issue may be stated thus: a trust to pay the income to A for life and upon the death of A remainder to B, if B survives A, and if B does not survive A then over to charity. We have no hesitation in saying that the value of the contingent charitable gift may be mathematically or actuarially computed. The value of such an interest contingent on survivorship may be computed on the basis of experience tables. Cf. Treas. Reg. 108, § 86.19 (Gift Tax); Robinette v. Helver-

ing, 1943, 318 U.S. 184, 188, 63 S.Ct. 540, 87 L.Ed. 700. From this the taxpayer argues that by using the nearest ages of the widow and the brother (a required practice in the use of mortality tables) we find that for computation purposes they both have the same age, i.e. 68 years, and therefore the same life expectancy. Consequently, it says that the chances of one surviving the other are 50% and with that factor the value of the gift to charity may be computed. We do not question the correctness of this computation, nor its use in other situations; but on turning to the Regulations for the correct solution we find this method inapplicable here. Section 81.46 of Treas. Reg. 105 reads in part as follows: *"Conditional Bequests:*—If as of the date of decedent's death the transfer to charity is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, *no deduction is allowable unless the possibility that charity will not take is so remote as to be negligible.* If an estate or interest has passed to or is vested in charity at the time of decedent's death and such right or interest would be defeated by the performance of some act or the happening of some event which appeared to have been *highly improbable* at the time of decedent's death, the deduction is allowable." [Italics supplied.] Here it is not certain that the charity will take 50% of the corpus; only that it has a 50-50 chance of getting all or nothing. The Regulation says that the chance that charity will not take must be so remote as to be negligible. The chance that the charity here will not take is far from being so remote as to be negligible nor is it highly improbable; in fact, even taxpayer's own computations admit that there is an even chance that charity will not take. Under our analysis no deduction whatever is therefore allowed for the gift to charity. If, however, the chance that charity will not take[4] is so remote as to be negligible, then actuarial computations are permissible to evaluate the amount of the deduction to be allowed.

Therefore, under this view if the widow were aged 30 and the brother aged 90, the chance that the charity would not take would be very good and not extremely remote. If, however, the brother were aged 30 and the widow aged 90, the charity's chance of not taking might be said to be so remote as to be negligible and the deduction would seem to be allowable. Even where great differences in age exist, it must be recognized that life expectancies of individuals computed by mortality tables seldom approximate reality in any given case. That might constitute the remote chance that charity would not take, but the probabilities are that the older person would predecease the younger. Here, where the same age is attributed to both persons we find that both have the same life expectancy. Not only will neither probably approximate the computed expectancy but any determination of survivorship, based on actuarial computation, between persons whose age difference is relatively slight, is fraught with conjecture.

[10] We have been referred to the case of Meierhof v. Higgins, 2 Cir., 1942, 129 F. 2d 1002 as authority for the position that the value of a contingent remainder to charity should be actuarially computed and allowed as a deduction. There, if the wife aged 71 should survive the other two life tenants aged 74 and 79 the gift to charity would have been defeated. The court based its decision in large part on § 81.44 of the Regulations which reads in part as follows: "If a trust is created for both a charitable and a private purpose, deduction may be taken of the value of the beneficial interest in favor of the former only insofar as such interest is presently ascertainable and hence severable from the interest in favor of the private use." The court construed "both a charitable and a private purpose" to include an alternative gift to charity, but doubt has been cast on the validity of this interpretation. See Paul, supra, at p. 426. Moreover, Regulations 105, § 81.46 as it now reads was not then in effect. Paul,

---

[4] Note the distinction between this phraseology and a possible wording that the deduction is allowable unless the chance that charity will take is too remote.

at p. 427, states the Treasury's position to be that the mere fact that a gift to charity may be actuarially computed does not conclusively establish its deductibility. We agree with this interpretation of the Regulation and find no reason for denying the validity of the Regulation.

In Gardiner v. Hassett, D.C.Mass.1945, 63 F.Supp. 853, 856 the gift to charity depended on the survivorship of a person aged 84 as against two life tenants aged 60 and 64. The court following Meierhof v. Higgins, and again using the older Regulations, said " * * * there was far more than a reasonable certainty the charitable bequests would vest. In fact it was extremely likely the bequest to the charities would take effect." And again: "This court is compelled to make a finding that the contingency upon which the bequests to the charities were to take effect was far more than a probability." This language it seems to us is not in accord with § 81.46 of the new regulations.

On the basis, therefore, of Treas. Reg. 105, § 81.46 we agree with the Tax Court's conclusion that the actuarial value of the charitable remainder is not allowable as a deduction. Cf. Boston Safe Deposit & Trust Co. v. Commissioner, 1934, 30 B.T.A. 679 dismissed without opinion C.C.A. 1st, Dec. 10, 1934. Moreover, we believe that this analysis does not conflict with United States v. Provident Trust Co., 1934, 291 U.S. 272, 54 S.Ct. 389, 78 L.Ed. 793.

 The final problem deals with the valuation of the property passing under the power of appointment. We agree with the Tax Court that decedent in effect exercised two powers, one to appoint one-half of the income of his father's trust for the life of his brother, and the other to appoint one-half of the corpus of his father's trust on the death of his brother. The appointee of the corpus would not acquire the possession or use of the corpus until some future date. Even though the same appointee received the benefit of the income during the continuance of the trust set up by the father, it does not seem to us that the present value of these combined rights should have the same value as a corpus transferred at the death of decedent. The

restriction on the use of the corpus affects the value of the rights passing under the exercise of the powers and should, we think, make that combined value less than the present value of the corpus.

The decision of the Tax Court is affirmed.