OPINION. Tietjens, Judge: We turn first to that aspect of the cases which cuts across both the estate tax controversy and the income tax problem, i. e., the question of whether the decedent “made a transfer” to Trust 924 within the meaning of section 811 (d) (2) [1] or was the “grantor” of the trust within sections 166[2] and 167,[3] Internal Revenue Code, the pertinent portions of which appear in the footnotes. In epitome, the petitioners’ position on this aspect is that the basis of the decedent’s fortune was acquired while the McDonalds were residents of Idaho, a community property state; that all of the property held by Lenore and decedent at the time of their subsequent separation consisted of increments- to property originally held as community property or was purchased with the proceeds of such property and that the 12,000 shares of Penney stock placed in trust originally and the 500 shares afterwards added were less than Lenore’s interest in the community and were actually her property; and, therefore, that the decedent could not have made the transfer to the trust and could not have been the grantor thereof. A careful study of the whole record convinces us that it does not contain evidence which would sustain this contention. To the contrary, we think the record as a whole demonstrates that decedent transferred stock of which he was the owner to Trust 924 and that he was the grantor thereof, and we have so found. Decedent and Lenore lived in Idaho about four years, from 1913 to 1917. While there, approximately 102 shares of Penney stock were acquired, and, Idaho being a community property state, it appears that this stock could properly be treated as community property. Nevertheless, we cannot on the evidence trace these shares or the proceeds of them into the 12,000 shares which originally formed the corpus of Trust 924 and we are less able to find — after the property settlement of November 30,1931, the transfer of 5,500 shares from the trust to Lenore pursuant to the settlement as her separate property and the addition of 500 shares to the trust by the second party (the decedent) — that the shares remaining in the trust had ever been the property of anyone other than decedent, the trustor of the trust. As is evident from the findings of fact, the great bulk of the transactions in Penney stock took place after the McDonalds had left Idaho in 1917 to take up their residence in the noncommunity property states of Minnesota and New York. There is nothing to show that any of the stock ever was registered in any name other than that of decedent or that any other person ever sold, bought, or managed the shares. The source of the funds used to purchase shares after the 1913-1917 period is not disclosed. The only testimony, aside from the Penney Company books (which show ownership in the decedent) in regard to the stock transactions was given by an assistant secretary of the Penney Company who was first employed by the company in 1917 and was not familiar with the specific way in which decedent acquired his shares. None of the shares were acquired after the couple took up residence in California in 1930. The shares placed in trust in 1930 represented something less than a third of the stock standing in decedent’s name at the time. Despite Lenore’s very general testimony to the contrary we think it very unlikely that decedent placed in the trust any shares of which he was not the owner. Though petitioners’ counsel have made an earnest attempt to lead us through the maze of complicated stock transactions extending over many years, set out in our findings, to the ultimate conclusion that Lenore rather than decedent was, in fact, the transferor or grantor of the stock placed in Trust 924, we are unable to follow. On the question of ownership of the stock as between husband and wife we attach no significance to the fact that Lenore in a recital following decedent’s signature to the trust agreement joined in and ratified the agreement and waived any community or other interest which she “might otherwise assert” to the property made subject to the trust. We think this was simply one of the usual cautionary formalities attendant upon conveyances by either a husband or wife. After a careful study of tbe record of stock transactions, the pleadings, the language employed in the trust agreement, the property settlement, and the testimony of Lenore, we conclude that the 7,000 shares of stock which were later split into the 21,000 shares remaining in the amended trust were, at the time placed there, the property of decedent and that he was the transferor and grantor thereof. This conclusion does not mean, however, that the respondent’s action in including the entire value of the assets of Trust 924 in the gross estate of decedent was proper. Section 811 (i) provided that if the transfer of the stock to the trust was made * * * for a consideration in money or money’s worth, but is not a bona fide sale for an adequate and full consideration in money or money’s worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent. The parties are in apparent agreement that in the event we hold that decedent was the transferor of the assets to Trust 924, the value of such assets is includible in the' gross estate unless the transfer of all or some part thereof was made for an adequate and full consideration in money or money’s worth. The question, then, is whether the transfer to Trust 924, or any part thereof, was made for “money’s worth.” In dealing with gift tax questions and questions involving claims deductible in determining gross estate where the statutory language is similar to the language used in section 811 (i) it has been held and recognized that transfers of property or contracts entered into for the support of children by the father are made for “money’s worth”. Weiser v. Commissioner, (C. A. 10) 113 F. 2d 486; Estate of Eben B. Phillips, 36 B. T. A. 752; Edmund C. Converse, 5 T. C. 1014, affd. 163 F. 2d 131; Roland M. Hooker, 10 T. C. 388. See also 1 Paul, Federal Estate and Gift Taxation (1942), pars. 11.20, 11.24. On this point both parties cite Helvering v. United States Trust Co., (C. A. 2) 111 F. 2d 576, reversing on another issue and remanding 39 B. T. A. 783, certiorari denied 311 U. S. 678. Petitioners rely on that case and respondent seeks to distinguish it. On its facts, that case is as close as any we can find to the case before us, and we think the principle there established should govern the question here. The United States Trust Co. case involved the question of whether any part of a trust fund was includible in the gross estate of decedent under the then equivalent of section 811 (d) (2) of the Internal Revenue Code. In that case decedent had become estranged from his wife some years before he died, and in contemplation of a divorce he made an agreement with her on January 31, 1929, by which he agreed to pay her $2,500 a month during her life, out of which she was to support berself without further recourse to him, and, in addition, to support, maintain, and educate her daughter during the time the said daughter resided with her. The child was to spend half her time with her father and half with her mother, and the testator agreed to assume certain of her expenses while she was with her mother. The amount of $2,500 per month was fixed by the parties as the approximate amount reasonably required for the support of the wife and daughter in accordance with their station in life and with the decedent’s ability to furnish such support. The stipulation upon which the case was tried declared that it was established and fixed by agreement of the parties that of the said sum of $2,500 it was contemplated that approximately one-third thereof should be allocated and devoted to the support and maintenance of the daughter during her minority. The agreement of 1929 also provided that the decedent might at any time commute the annuity by setting up a trust for $425,000, the income from which was to be paid to his wife for life, and which she should accept in satisfaction of any claims against him under the agreement. The parties were divorced in May 1929. In the following June the decedent exercised his option to discharge his obligations by setting up a trust, and transferred to trustees securities valued at about $414,000, the income from which was to be paid to the wife for life, she to have a power to appoint $200,000 of the principal by will. The balance of the corpus, or the entire corpus in case there was no valid exercise of the power of appointment, went to the daughter at the death of the wife or to her lawful issue, if any. If she left no issue, then the corpus went to decedent, or as he should appoint by will. Decedent reserved a joint power in himself and his wife at any time to terminate, modify, alter, or revoke the trust in whole or part. The property of the decedent in 1929 was worth more than $1,425,000. He died in May 1935. At the date of decedent’s death the child was ten and one-half years of age. The Board of Tax Appeals (now this Court) excluded the corpus from decedent’s estate on the ground that the release by the wife was adequate and full consideration in money or money’s worth. The Circuit Court of Appeals held that the release of the wife’s marital right of support was not “money’s worth,” but that insofar as the trust was set up in consideration of a release of that part of the annuity for the support of the child, it was not set up in consideration of the release of a marital right, and was not includible in the gross estate. The Circuit Court of Appeals concluded: * * * However, we cannot see that it makes any difference, other than one of the merest form, whether the wife’s agreement was to support the child, whatever it cost, in exchange for the testator’s promise to pay her $S33.33 a month, and to support herself in exchange for a promise to pay her $1,666.66 a month; or whether she agreed to support both in exchange for a promise to pay her $2,500 a month. If the agreement took the first form the bargain would nevertheless have to be scrutinized to see whether $833.33 was more or less than a “full and adequate” consideration, and only so far as it was would the annuity be recognized as made for “money’s worth”. In either view the only relevant fact is what was the cost of the child’s support; so far as the annuity paid for it, the annuity was given for “money’s worth”; and so far as the trust fund was given to release that much of the annuity, it should not be included in the gross estate. The Circuit Court of Appeals also concluded that it was necessary to find the prospective yearly cost of the child’s support when the trust was set up in 1929; then find the commuted value of the cost and what proportion it represented of the value of the trust fund when it was set up; and exclude from the gross estate that proportion of the value of the trust fund when the decedent died. In the case before us both parties agree that the trust was for the primary benefit of the children and that no marital rights are involved. Nevertheless, in its essentials, it seems to us that the purposes and terms of the trust instrument executed by decedent here are substantially similar to those involved in Helvering v. United States Trust Co., supra, and that the question is what was the prospective value of the children’s support. Petitioners contend that the full value of the transferred assets is to be taken as “money’s worth” since the settlement agreement and the terms of the trust were agreed upon at arm’s length and only after bitter negotiations between decedent and Lenore and their attorneys. We cannot accept this contention. It is apparent that decedent went beyond his legal obligation to his children in creating the trust. At most, Delos was entitled to his father’s support for about four years when the trust was established; Nedra for about 12 years. In 1931 the corpus of the trust was worth at least $220,000 and it produced net income ranging from some $28,000 in 1931 to $33,500 in 1943. In 1936 the income was $65,000 while in 1933 it amounted to but $8,578.90. That decedent thought this income alone was more than necessary for the support of the children is shown by the fact that provision was made for the accumulation of unused income in the event of Lenore’s death, before the children attained their maj ority. Furthermore, after majority, when decedent’s obligation to support would cease, the children were still entitled to certain amounts of income and on reaching the age of 35 the trust corpus was distributable to them. Also, the recital in decedent’s will in connection with bequests of $5 to each child that “my reason for such bequest is that I have previously made a settlement upon (them) from my estate,” is evidence that decedent was doing more in setting up the trust than merely meeting his legal obligation of support. The arrangement had aspects of a testamentary disposition. Certainly, in these circumstances, we cannot say that the entire value of the trust assets was transferred for “money’s worth.” Cf. Roland M. Hooker, supra. Only that portion of the value which represents the children’s right to support is to be so treated. Helvering v. United States Trust Co., supra. The question of the proper valuation of the children’s support has given us pause. The evidence on this point is meager at best. Respondent argues that petitioners have failed in their burden of proof and that nothing whatever should be allowed. Nevertheless, it seems incumbent on the Court to place a reasonable prospective value on the children’s support and after carefully considering the evidence, and “bearing heavily” on the petitioners “whose inexactitude” raises the problem, we have found that value to be $30,000. Cohan v. Commissioner, 39 F. 2d 540, 544; Edith M. Bensel, et al, Executors, 36 B. T. A. 246, 255, affd. 100 F. 2d 639. Accordingly, pursuant to section 811 (i), there should be included in the gross estate only “the excess of the fair market value at the time of death” of the assets of Trust 924 over the sum of $30,000 which we have found to be the value of the children’s rights to support at the time the trust was set up. On the income tax phase of the questions before us, respondent contends that the income of Trust 924 is taxable to the grantor either under the doctrine of Helvering v. Clifford, 309 U. S. 331, or sections 166 or 167 of the Internal Revenue Code or a combination of them. We dismiss respondent’s contention with regard to the applicability of the Clifford case. It is not pressed with conviction on brief and we do not think the facts here would support its application. On the other hand, we believe that both sections 166 and 167 are called into play by the circumstances present in this case. The primary contention advanced by petitioners against their applicability is that the extensive powers to change, amend, and revoke the trust in whole or in part reserved to decedent in Article VI of the trust agreement could only be exercised in conjunction with Lenore, and that she had a “substantial adverse interest” in the corpus or income. We fail to see that Lenore had such an interest as required in order to prevent the application of those sections. It has been said that this is largely a question of fact to be determined with proper regard to the legal principles applicable to the interests created by the trust instrument. Mertens, Law of Federal Income Taxation, section 37.13 and cases there cited. Petitioners rely on Meyer Katz, 46 B. T. A. 187, affd. (C. A. 7) 139 F. 2d 107, which was followed in Estate of Leon N. Gillette, 7 T. C. 219, a gift tax case. But we think the facts here present contingencies not involved in those cases, which preclude their pertinency. As pointed out in Clair R. Savage, 4 T. C. 286, in the Katz case “the grantor and his wife jointly could terminate the trust and revest the corpus in the grantor. * * * the wife would benefit from the trust only if the minor beneficiary should predecease her and the grantor, leaving no issue.” The children were unmarried and had no issue during the taxable years. We held this right gave the wife a “substantial adverse interest.” But let us look at the facts here. Lenore was approximately 42 years of age when Trust 924 was amended, Delos was 17, and Nedra 6. At the beginning of the first taxable year involved, 1944, Lenore was 54, Delos 29, and Nedra 18. Delos was married in 1936 and remained so during the taxable periods. He had a child born in 1941. Nedra was married in February 1944 and had one child born in March 1945. Any interest Lenore had in the trust was contingent upon the death of either of her children, without issue surviving, before arriving at the age of 35. As argued by respondent, we think Lenore’s possibility of benefiting from the trust was much more remote than the wife’s in the Katz case. Though perhaps more difficult of accomplishment, we also think the Gillette case distinguishable on its facts. But even if we were unable to distinguish the Katz and Gillette cases, that would only preclude the application of section 166 and would not necessarily prevent respondent from taxing the trust income to decedent under section 167 (a) (2). In the Katz case section 167 was held inapplicable principally because the trust income could never be distributed to the grantor even in the event of revocation of the trust. No such situation here exists. It seems clear that through the exercise of the broad powers, of revocation and alteration reserved to decedent, the income of the trust could be distributed to him, and unless Lenore had a substantial adverse interest in the disposition thereof, section 167 would make that income taxable to decedent. Cf. Lillian M. Newman, 1 T. C. 921. The question then is whether Lenore had such an interest in the disposition of the trust income. We do not think she had. While Lenore had a substantial interest in the income during the early years of the trust, during the taxable years, the critical period, neither decedent nor Lenore had any vested right in the income. During those years the instrument required the income to be paid over to Delos and Nedra and it was being so paid. The only interest Lenore could possibly have had was under Article V (g) of the amended trust which provided that the share of any deceased beneficiary “in any accrued or undistributed net income as of the date of death of such beneficiary shall be distributed to the beneficiary entitled to the next successive interest.” No provision for the accumulation of income before Lenore’s own death was contained in the instrument. It was currently distributable and was being currently distributed. Thus the only possibility that Lenore had of benefiting from the income was in the event Delos or Nedra should predecease her, leaving no issue, at a time during the year when income had been earned but remained undistributed. In the circumstances and in view of what we have heretofore said concerning her possibility of benefiting from the corpus, we cannot say that her interest in the income during the taxable years was substantial. We hold that respondent was correct in taxing the income of the trust to decedent during the years 1944, 1945, 1946, and the period January 1, 1947, to May 16, 1947. Decedent’s income tax return for 1944 was filed March 15, 1945. The deficiency notice was mailed January 17, 1949. The gross income stated in decedent’s return was $47,416.65 and the income of Trust 924 for 1944, which we hold is taxable to decedent, was $35,000. This amount is in excess of 25 per cent of the amount of gross income properly includible in the return. Section 275 (c) is therefore applicable and assessment of the deficiency in income tax for 1944 is not barred. One other item should be disposed of. Respondent has added $62,935, the income of Trust 924 for the full year 1947, to decedent’s income for that period in determining the deficiency. Decedent died May 16, 1947. The income of the trust for the period January 1,1947, to May 16, 1947, has been stipulated as $42,000. It is this amount which should be used in determining the deficiency for the period January 1, 1947, to May 16, 1947. Decisions will be entered wider Bule 50. SEC. 811. GROSS ESTATE. (d) Revocable Transfers.— ******* (2) Transfers on or prior to June 22, 1936. — To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money’s worth. Except in the case of transfers made after June 22. 1936, no interest of the decedent of which he has made a transfer shall be included in the gross estate under paragraph (1) unless it is includible under this paragraph; SEC. 166. REVOCABLE TRUSTS. Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested— (1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or (2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor. SEC. 167. INCOME FOR BENEFIT OF GRANTOR. (a) Where any part of the income of a trust— (1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor ; or (2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the ■grantor; * * * ******* then such part of the income of the trust shall be included in computing the net income of the grantor.