PETER B. BARKER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 55171. Filed March 14, 1956.

*Edward B. Lucius, Esq.*, for the petitioner.
*Andrew Kopperud, Jr., Esq.*, for the respondent.

## OPINION.

TIETJENS, *Judge:* In taxing the accumulated but undistributed income of the trust to petitioner the Commissioner places reliance on the broad terms of section 22 (a) and also on section 167.

On the facts of this case, we think the controversy is to be decided on the basis of section 167. That section provides that when any part of the income of a trust

is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or

may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; * * *

then such part of the income of the trust shall be included in computing the net income of the grantor.

Here there is no question about that portion of the trust income which was actually paid over to petitioner or applied to pay premiums on the insurance policies held in trust. Petitioner included such income

in his returns and paid the tax on it. The issue here arises with respect to the trust income which was accumulated but not paid over to petitioner. Is the petitioner also accountable for such accumulated income? We think he is.

The corporate trustee as such had no substantial adverse interest in the disposition of the trust income. Neither do we think the other two trustees (the father and mother of petitioner) had a substantial adverse interest in the disposition of the income. Whether they had such an interest is largely a question of fact. *D. G. McDonald Trust,* 19 T. C. 672, affd. 225 F. 2d 621 (C. A. 8), certiorari denied 350 U. S. 965. Here it is true that the father and mother had a possible interest in the accumulated income, but only in the event that petitioner dies before January 8, 1963, and then only if he should die without wife or issue. The facts show that the actuarial probability that the trust would be terminated by death of petitioner is negligible—the probability of a male aged 21 attaining the age of 35 being a minimum of 96.85 per cent and a maximum of 97.3968 per cent. Further, petitioner's parents could take down no accumulated income unless petitioner died before reaching the age of 35 and left neither wife nor issue to survive him. He has both a wife and a child. On the facts we hold that petitioner's father and mother had no substantial adverse interest in the trust income. *D. G. McDonald Trust, supra.*

Furthermore, the trustees do have discretion almost without limit to distribute all income of the trust to petitioner. The trust instrument vests the power to distribute the income to petitioner in the absolute and uncontrolled opinion of the trustees.

> If, because of accident, sickness or other emergency, or unusual condition of any kind, presently unforeseen, or, if in the judgment of said Trustees, the Donor [petitioner] shall be in need of funds in addition to the net income payable to him [otherwise under the instrument] * * *

Under somewhat similar circumstances this tribunal has held trust income to be taxable to the grantor although undistributed, under sections 166 and 167. In *Mary E. Wenger,* 42 B. T. A. 225, affd. 127 F. 2d 523 (C. A. 6), the terms of the trust provided for distribution of income in the event of "any accident, sickness, calamity, misfortune, adversity, bereavement or loss, financially or otherwise, shall visit * * * the maker * * *." In holding the income taxable to the grantor of the trust we said

> The so-called contingencies, "any accident, sickness, calamity, misfortune, adversity, bereavement or loss, financially or otherwise", the occurrence of one of which gives rise to the right to call for distributions from the trust, are so broad and all-embracing that the use and enjoyment of the income and, if necessary, the corpus by petitioner, is, for practical purposes, almost as complete as if she had retained title to the property. Petitioner has merely set aside in the hands of a trustee an amount of her excess capital to be held and accumulated as a protection to herself and her children against a "rainy day." These named contingen-

cies permit her, if she cares to do so, and secures the acquiescense of the trustee, to cause the expenditure of the income, and if necessary the corpus, for the needs for which she would normally have used and expended the property had no trust been created. * * *

The fact that the grantor, under the terms of the trust in the *Wenger* case was required to make a written request for income to take care of the above contingencies made no difference. See also *Helvering* v. *Evans*, 126 F. 2d 270 (C. A. 3), reversing 42 B. T. A. 851, and *Commissioner* v. *Willson*, 132 F. 2d 255 (C. A. 6), reversing 44 B. T. A. 583.

Petitioner contends that if we hold as above indicated it is tantamount to holding that petitioner is taxable with income which is income of the trust and which is not income of petitioner, and accordingly that the Fifth and Fourteenth Amendments of the Constitution are violated. We find no merit in this contention.

Petitioner also makes the point that there is nothing in the record to indicate that the trust in question was set up to avoid taxes. But even if this is so petitioner cannot thus avoid the incidence of the statute which we think plainly charges him with taxes on the accumulated income of the trust. *Helvering* v. *Evans, supra.*

Our view of the case makes it unnecessary to discuss the applicability of section 22 (a) or of the *Clifford* doctrine.

*Decision will be entered for the respondent.*