**BERRY v. KUHL, Collector of Internal Revenue (UNITED STATES, Intervener).**

**No. 9758.**

United States Court of Appeals Seventh Circuit.

May 12, 1949.

Timothy T. Cronin, U. S. Atty., and E. J. Koelzer, Asst. U. S. Atty., both of Milwaukee, Wis., Theron L. Caudle, Asst. Atty. Gen., and James P. Garland, Harry Marselli, and Ellis N. Slack, Sp. Assts. to Atty. Gen., for appellant.

O. A. Oestreich, Hiram M. Nowlan, Robert C. Lovejoy, and Pierpont J. E. Wood, all of Janesville, Wis., for appellee.

Before KERNER and MINTON, Circuit Judges, and LINDLEY, District Judge.

MINTON, Circuit Judge.

This is a suit for refund of federal estate taxes alleged to have been illegally collected from the plaintiff-appellee as executrix of the estate of Earl E. Berry, deceased. From a judgment in favor of the plaintiff, the Collector of Internal Revenue has appealed.

The essential facts, as found by the District Court and as to which there is no dispute, are reducible to the following summary. Earl E. Berry, a resident of Wisconsin, died testate at Beloit, Wisconsin, on November 9, 1943. His will, which was admitted to probate, created a testamentary trust of the residuary estate and provided that the income of the trust be paid to his widow, Wilma E. Berry, for life and thereafter to his daughter, Martha Berry Datus. Upon the death of the daughter, the remainder was bequeathed to the Beloit Foundation, Inc., a Wisconsin charitable organization. Martha Berry Datus predeceased the testator.

The will contained the following provision:

"Sixth: If by reason of accident, illness or other cause, either Wilma E. Berry or Martha Berry Datus requires funds for this treatment, support or maintenance, I request that the court having jurisdiction of the trust created under this will authorize my trustee to pay to either of them such portion of the principal of the trust fund as the court deems advisable, not exceeding the sum of Five Thousand Dollars ($5,000.00) in any one year."

The plaintiff, as executrix, filed the federal estate tax return reporting a gross estate of $428,645.92 and claiming a deduction for charitable bequests of $113,216.65 and paid the tax shown due thereon of $51,214.57. The Commissioner of Internal Revenue disallowed a portion of the deduction taken for charitable bequests, reducing this deduction by the present value of a $5,000 annuity, which $5,000 was the maximum contingently withdrawable by the plaintiff in one year, according to the clause in the will set out above. The Commissioner assessed a deficiency, which the plaintiff paid. After filing a claim for refund which was rejected, the plaintiff brought this action to recover the deficiency in the amount of $10,286.91, plus interest.

On the date of the testator's death, the plaintiff was fifty-two years of age. Her individual estate was valued at approximately $300,000, and produced an annual income of $9,000 to $11,000 from 1944 to 1947. The income from the trust established by the testator ranged from $7,000 to $11,000 annually during this period. The plaintiff's accustomed standard of living called

for an expenditure not exceeding $7,500 a year. On the basis of these data, the District Court found that "the corpus of the trust is not substantially threatened by any possibility of invasion because of the needs of said Wilma E. Berry."

There is one point in issue in this case and it can be blocked out very narrowly. We are dealing with a testamentary charitable transfer subject to diversion for a private purpose where the transferor has hedged on his charitable bequest by authorizing the application of part of the remainder designated for charity to satisfy the requirements of a more favored private beneficiary. By regulations,[1] the Treasury has limited the deductions for such transfers for the purpose of the federal estate tax, Internal Revenue Code, 26 U.S.C.A. § 812(d), to the portion of the transfer which is "presently ascertainable" as destined for the charitable use, "presently" referring to the date of the testator's death. No question is raised as to the validity of these regulations.

▆ Nor is there any disagreement as to the governing principle to determine if and when the charitable interest in the bequest is "presently ascertainable" so as to be deductible. That principle may be stated as follows: The charitable interest is deductible in full where the power of the private beneficiary to invade the corpus is limited by a standard fixed by the terms of the will and capable of being stated in terms of money, and where the circumstances of the private beneficiary indicate that the possibility of invasion is so remote as to be negligible. Ithaca Trust Co. v. United States, 279 U.S. 151, 154, 49 S.Ct. 291, 73 L.Ed. 647; Hartford-Connecticut Trust Co. v. Eaton, 2 Cir., 36 F.2d 710; Estate of James M. Schoonmaker, Jr., 6 T.C. 404. Where, on the other hand, no measurable standard is fixed by the will to limit the power of invasion, no deduction for the charitable interest will be allowed, however remote or tenuous the possibility of invasion might be. Henslee v. Union Planters Bank, 335 U.S. 595, 69 S.Ct. 290; Merchants Bank v. Commissioner, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35; Gammons v. Hasset, 1 Cir., 121 F.2d 229, certiorari denied, 314 U.S. 673, 62 S.Ct. 135, 86 L.Ed. 538.

Finally, both parties agree with the District Court that considering the age, wealth, and living habits of the plaintiff, the possibility that she might dip into the principal of the trust is remote.

The issue therefore comes to this: Does the provision in the will authorizing payments out of the trust corpus to the plaintiff upon the specified contingencies impose a standard limiting the extent of these payments, or could she under the terms of the will demand part or all of the $5,000 a year according to her unlimited discretion?

The Commissioner disallowed the deduction of the present value of an annuity of $5,000 on the ground that the will contains no such standard, and therefore none of that annuity is "presently ascertainable" as a charitable interest under the language of the regulation, Sec. 81.44, while the plaintiff contended successfully below and takes the position here that such a standard is set up in the will, and in view of the substantial wealth and fairly modest standard of living of the plaintiff, the likelihood of her invasion of this annuity should be ignored.

▆ The will requests the court having jurisdiction of the trust to pay the life-

---

1 "Sec. 81.44 Transfers for public, charitable, religious, etc., uses.

\* \* \* \* \* \*

"If a trust is created for both a charitable and a private purpose, deduction may be taken of the value of the beneficial interest in favor of the former only insofar as such interest is presently ascertainable, and hence severable from the interest in favor of the private use."

"Sec. 81.46 Conditional bequests.

\* \* \* \* \* \*

"If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of such power." (26 CFR, Cum. Supp., 81.44 and 81.46.)

tenant a sum not exceeding $5,000 in any one year if "by reason of accident, illness or other cause," she "requires funds for this treatment, support or maintenance." If the payment could be made for "accident, illness or other cause" without more, it is clear that no standard would have been established and this case would have been ruled by Henslee v. Union Planters Bank, supra, and Merchants Bank v. Commissioner, supra. We think, however, that "other cause" is defined and limited by the subsequent part of the sentence, "this * * * support or maintenance." Payment to the life tenant is thus authorized for accident, illness, support and maintenance. The first two contingencies, accident and illness, hem in the life tenant's power to invade. Commissioner of Int. Rev. v. Wells Fargo B. & U. Tr. Co., 9 Cir., 145 F.2d 130; Commissioner of Int. Revenue v. Bank of America, etc., 9 Cir., 133 F.2d 753. It remains to determine the extent, if any, to which "support or maintenance" supply a standard.

In Hartford-Connecticut Trust Co. v. Eaton, supra, the will gave the trustee power to pay the widow any part of the corpus deemed necessary "for her comfortable maintenance and support." After analyzing a number of state cases involving similar clauses, the court said:

" * * * in all the court imposed a limitation, couched generally in such clauses as that the withdrawal must be necessary according to the circumstances or station of life of the beneficiary. We can understand this in no other way than as importing the condition that, with due regard to changes in cost, the power is intended only to secure to the beneficiary the kind of living to which he is used and as interpolating the words expressly used in the will under consideration in Ithaca Trust Co. v. U. S. Indeed, it is patent that in the ordinary case this is all that a testator really wants, and all that the beneficiary needs." 36 F.2d at page 711.

To the same effect are Lucas v. Mercantile Trust Co., 8 Cir., 43 F.2d 39; First Nat. Bank v. Snead, 5 Cir., 24 F.2d 186; Estate of James M. Schoonmaker, Jr., supra, and a number of other Tax Court decisions which are reviewed in the opinion of the District Court in this case reported in 77 F.Supp. 581. All hold that "support," "support and maintenance" and similar expressions set up a sufficiently definite standard to permit a deduction for the federal estate tax.

With the reasoning and results of this line of cases, we agree. We think they and the present case come under the rule of Ithaca Trust Co. v. United States, supra, which has been recognized as valid in the most recent Supreme Court decision on this problem, Henslee v. Union Planters Bank, supra. We do not accept the Collector's construction that the plaintiff for any reason whatever could obtain funds for her support and maintenance, meaning, as we understand it, that she could raise her standard of living arbitrarily, or perhaps give her property away or waste it, and recoup from the principal of the trust. A more justifiable construction is that the testator intended the plaintiff to enjoy for her life at least the standard of living she enjoyed at the time of his death, and to permit recourse to the trust principal only in the event the return from her own large estate, as well as the income of the trust dwindled until that living standard could no longer be maintained therefrom. Moreover, if a requirement for support and maintenance by a life tenant is reviewable by a court, as it appears under the law of Wisconsin, the state of the testator's domicile, see Will of Olson, 165 Wis. 409, 162 N.W. 429; Murray and others v. Kluck and others, 87 Wis. 566, 59 N.W. 137, it is difficult to see what test could be applied to measure the reasonableness of an expenditure for support and maintenance, if not the standard of living of the life tenant as at the date of the testator's death.

Since the possibility of invasion is remote, and we hold that the will provides a sufficient standard fixed and measurable in terms of money, it follows that the charitable remainder is deductible in full. The judgment of the District Court is affirmed.