Victor G. NARDI, as Trustee of the Residuary Trust under the Will of Henrietta S. Seipp, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 65 C 2155.

United States District Court
N. D. Illinois, E. D.
Dec. 30, 1966.

Sidley, Austin, Burgess & Smith, Chicago, Ill., for plaintiff.

Edward V. Hanrahan, U. S. Atty., for the Northern District of Illinois, Chicago, Ill., for defendant.

### MEMORANDUM

PERRY, District Judge.

This is an action brought by the Trustee of the residuary trust under the Will of Henrietta S. Seipp, deceased, to recover federal estate taxes alleged to have been erroneously and illegally assessed and collected.

Henrietta S. Seipp who died December 23, 1960, left a Will, Article VIII of which created a residuary trust with a life income interest to her brother, Herman Seipp and the remainder to a charitable donee, the Shriners Hospital for Crippled Children (sometimes referred to herein as "Shriners Hospital") in Chicago.

Article VIII of the Will read in pertinent part, as follows:

"I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal or mixed, of every kind and nature, wheresoever situtated, of which I may have been seized or possessed and to which I may be entitled at the time of my decease (including any and all legacies and bequests hereinbefore set forth which may have lapsed or failed by reason of the death of the legatee prior to my decease) to VICTOR G. NARDI, of Chicago, Illinois, (hereinafter for convenience called "TRUSTEE"), as Trustee, to have and to hold the same for and upon the following trusts, purposes and conditions, to-wit:

\* \* \* \* \* \*

"*Paragraph 3*—The entire net income from the trust estate, commencing at the time of my death, shall be paid to my brother HERMAN SEIPP in convenient installments so long as he lives.

"*Paragraph 4*—If, because of accident, sickness, or other emergency or unusual condition of any kind, my said brother shall be in need of extra funds, then the TRUSTEE shall pay to him or for his benefit, for such purpose, such sum or sums from the principal of the trust fund as the TRUSTEE shall deem necessary therefor, and the judgment and determination of the TRUSTEE as to the necessity and amount of such payment shall be conclusive.

"*Paragraph 5*—Upon the death of my said brother, HERMAN SEIPP, the TRUSTEE shall, as quickly as may be reasonably possible, pay over and deliver to the SHRINERS HOSPITAL FOR CRIPPLED CHILDREN, 2211 North Oak Park Avenue, Chicago,

Illinois, the entire trust estate then remaining in his hands."

It appears that in computing the federal estate tax liability of the estate as reported in the tax return, the plaintiff Trustee deducted from the value of the gross estate the date-of-death value of the remainder interest in the residuary trust which was bequeathed to Shriners Hospital. He contends that such a deduction was proper under Section 2055 of the Internal Revenue Code, as amended which reads, in part—

"§ 2055. *Transfers for public, charitable, and religious uses.*

"(a) *In General.*—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers (including the interest which falls into any such bequest, legacy, devise, or transfer as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer, or power, if the disclaimer is made before the date prescribed for the filing of the estate tax return)—

"(1) * * *

"(2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation."

Parenthetically, there is no dispute that the Shriners Hospital for Crippled Children qualifies as a charitable organization under foregoing Section 2055.

Although there is no stipulation of facts in this case, an examination of the Complaint, Answer and briefs herein shows that there is no dispute that the federal estate tax return for the Estate of Henrietta S. Seipp was timely filed and that the tax reported therein of $31,675.02 (computed after deduction, pursuant to § 2055, of the value of the remainder interest in the residuary trust) was paid on or about March 8, 1962; that following an examination of the return by an agent of the Internal Revenue Service, an additional federal estate tax liability of $88,138.23, together with interest thereon of $14,673.20 was assessed; that the additional taxes so assessed, together with interest thereon, were paid by plaintiff Trustee by a payment of $86,811.43 made on January 22, 1965 and a payment of $16,000.00 made on February 18, 1965; that a timely claim for refund of tax of $86,124.93, plus interest as provided by law was filed by plaintiff Trustee on May 17, 1965 with the District Director; that six months have elapsed since the plaintiff Trustee filed the claim for refund and that the claim has not been allowed.

Each of the parties hereto has filed a motion for summary judgment and, this court having jurisdiction of the parties and of the subject matter, the cause is properly before the court for disposition on said motions for summary judgment, no issue of material fact being involved.

Here we have a testator who makes a bequest to a charitable organization of a remainder interest in a testamentary trust but who also provides that the Trustee shall have power to invade, in his discretion, the corpus of the trust, "If, because of accident, sickness, or other emergency or unusual condition of any kind, my said brother shall be in need of extra funds."

■ The question presented is whether, under the facts of this case, the value of the remainder interest bequeathed to Shriners Hospital qualifies for a charitable deduction under Section 2055 of the Internal Revenue Code of 1954. To qualify as deductible, it is necessary that the value of the remainder to the charity have, as of the testator's death, an ascertainable value.

In Berry v. Kuhl, 174 F.2d 565 (7 Cir.) the court held that the charitable interest is deductible in full where the power of the private beneficiary to invade the corpus is limited by a standard fixed by the terms of the will and capable of being stated in terms of money, and where the circumstances of the private beneficiary indicate that the possibility of invasion is so remote as to be negligible; that where on the other hand, no measurable standard is fixed by the will to limit the power of invasion, no deduction for the charitable interest will be allowed, however remote or tenuous the possibility of invasion might be.

The defendant Government contends that the provisions of paragraph 4 of Article VIII (quoted supra) of the decedent's will renders the value of whatever amount may be payable over as a remainder to the Shriners Hospital unascertainable as of December 23, 1960, the date of decedent's death.

The portions of the Treasury Regulations on estate taxes (1954 Code) pertinent to the problem, and which have the force of law (Com'r of Int. Revenue v. Sternberger's Estate, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246), read as follows:

"§ 20.2055–2 *Transfers not exclusively for charitable purposes.*

"(a) *Remainders and similar interests.* If a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest * * *

"(b) *Transfers subject to a condition or a power.* If, as of the date of a decedent's death, a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible. If an estate or interest has passed to or is vested in charity at the time of a decedent's death and the estate or interest would be defeated by the performance of some act or the happening of some event, the occurrence of which appeared to have been highly improbable at the time of the decedent's death, the deduction is allowable. If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, the deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of the power * * *."

As the court said in Lincoln Rochester Trust Co. v. Commissioner of Internal Revenue, 181 F.2d 424 (2d Cir.), "In deciding whether the language of the will provides a fixed and definite standard for invasion, we enter a field where fine verbal distinctions appear to hold full sway."

Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647, appears to be a landmark case in the field. There the will gave the widow a life estate in the residue of the estate and authorized invasion of the corpus to pay her any sum "that may be necessary to suitably maintain her in as much comfort as she now enjoys." The court, considering the question as to whether or not the provision for the maintenance of the wife made the gifts to charity so uncertain that the deduction of the amount of those gifts from the gross estate could not be allowed, said that the principal that could be used was only so much as might be necessary to continue the comfort then enjoyed and allowed the deduction, holding: "The standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion. The income of the estate at the death of

the testator and even after debts and specific legacies had been paid was more than sufficient to maintain the widow as required. There was no uncertainty appreciably greater than the general uncertainty that attends human affairs."

In Lincoln Rochester Trust Company v. McGowan, 217 F.2d 287 (2d Cir.), the will authorized the trustee "to take, from the principal of the trust herein provided for my wife, such sum or sums as in its sole discretion may be necessary to meet any unusual demands, emergencies, requirements or expenses for her personal needs that may arise from time to time. * * * This clause is intended to provide for emergencies arising from sickness, accident or failure of investments. Need caused by support by my said wife of, notes signed by her with or endorsed for, or any obligation assumed for another, should not (be) considered sufficient reason." The court said, at page 290—

"The primary question in this type of case is the ascertainment of the intention of the testator as expressed in the will. In the event that the will as thus construed makes the invasion of the corpus depend upon conditions 'fixed by reference to some readily ascertainable and reliably predictable facts', so that 'the amount which will be diverted from the charity and the present value of the bequest become adequately measurable', Merchants Nat. Bank of Boston v. Commissioner [of Internal Revenue], 1943, 320 U.S. 256, 261, 64 S.Ct. 108, 111, 88 L.Ed. 35, then in that event, and only then, may the trier or triers of the facts proceed to inquire as to the value, at the death of the testator, of the interest of the charities, which thus would constitute a deduction for purposes of computing the estate tax to be paid."

and concluded that the will, construed as a matter of law, disclosed an intention to provide for a continuance of the mode of life and standard of living of the life beneficiary and that, consequently, there was a sufficiently definite and fixed standard to permit ascertainment with reasonable certainty of the value, as of the date of death of the decedent, of the bequest to the charitable remaindermen. The court said, at page 292:

"That it was the purpose of the testator herein merely to insure that his wife would continue to enjoy her accustomed standard of living appears evident from the clear effort demonstrated in the will to disabuse anyone of the notion that the widow's mere whims would suffice to require an invasion of principal. Patently subjective criteria such as 'happiness' and 'pleasure,' which would render the standard too indefinite, Merchants Nat. Bank of Boston v. Commissioner [of Internal Revenue], supra, 320 U.S. at page 261, 64 S.Ct. at page 111; Henslee v. Union Planters Nat. Bank [& Trust Co.], supra [335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259], are noticeably absent here. The pertinent paragraph of the will specifically directs that the trustee not be bound or obligated to pay any sums merely because they are requested by the widow and further specifically excludes from the scope of permissible reasons to invade, need caused by the widow's support of or assumption of obligations for another. Thus, there is evident here no effort to render the widow the final arbiter of the propriety of invasion, a practice heretofore held fatal to any claimed deduction. Instead, the criterion employed is one of 'need' resulting from limited kinds of externally caused emergencies of such a nature as would diminish the widow's income or increase her expenses so that invasion of principal would be required to maintain her customary standard of living. Certainly, increased expenditures resulting from the illness of or accidents to the widow or diminutions in income from failure of investments must have been contemplated as possible causal factors creating a need to invade principal when it was held that 'proper care, support and maintenance' of the life beneficiary set

up a fixed and definite standard for invading principal."

In the case of Commissioner of Internal Revenue v. Wells Fargo Bank & Union Trust Co., 145 F.2d 130 (9th Cir.) the will of the decedent provided that income of a trust fund was to be paid to testatrix' niece for life and on the niece's death to named charitable organizations. The trustees were authorized to invade the principal as they deemed reasonable to assist the niece in case of her need "on account of any sickness, accident, want or other emergency." The court held that the amount of the charitable remainder was deductible, and, referring to its decision in an earlier case —Commissioner of Internal Revenue v. Bank of America N. T. & S. Ass'n, 9 Cir., 133 F.2d 753—said:

"This court in the Bank of America case, supra, relied on the Ithaca Trust Co. case, supra. We refused to follow the rule propounded herein by the Commissioner, that the mere existence of the legal power to invade the corpus of a trust in favor of a private individual defeats the charitable gift deduction, but rather looked to the actualities of the situation, found sufficient certainty of the value of the charitable bequest in the improbability of an invasion of corpus, and concluded that the deduction was allowable. The testator had provided for a trust directing that his sister be paid a certain sum monthly and any additional sums thought necessary 'by reason of accident, illness, or other unusual circumstances'; upon the sister's death the funds were to be paid to named charities. The sister's life expectancy was short; she lived simply and within her monthly allowance; she had independent means, and the net income of the trust was well in excess of her fixed annuity. We agree with the Tax Court that the facts in the Bank of America case and in the instant case are convincingly similar."

In the case of Merchants National Bank of Boston, Executor v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35, the trustee, under the trust set up by the will was authorized to invade the corpus "at such time or times as my said Trustee shall in its sole discretion deem wise and proper for the comfort, support, maintenance, and/or happiness of my said wife, and it is my wish and will that in the exercise of its discretion with reference to such payments from the principal of the trust fund to my said wife, * * * my said Trustee shall exercise its discretion with liberality to my said wife, and consider her welfare, comfort and happiness prior to claims of residuary beneficiaries under this trust." The court held that under this will the extent to which the principal might be used was not restricted by a fixed standard based on the widow's prior way of life. For example, her "happiness" was among the factors to be considered by the trustee. The court said, "Introducing the element of the widow's happiness and instructing the trustee to exercise its discretion with liberality to make her wishes prior to the claims of residuary beneficiaries brought into the calculation elements of speculation too large to be overcome, notwithstanding the widow's previous mode of life was modest and her own resources substantial," and concluded that the deduction should be disallowed for estate tax purposes.

In the case of Berry v. Kuhl, (7th Cir.) supra, the will permitted invasion "[i]f by reason of accident, illness or other cause" either of the beneficiaries "requires funds for this treatment, support or maintenance." The court said:

"If the payment could be made for 'accident, illness or other cause' without more, it is clear that no standard would have been established and this case would have been ruled by Henslee v. Union Planters Bank, supra, and Merchants [Nat.] Bank [of Boston] v. Commissioner [of Internal Revenue], supra. We think, however, that 'other cause' is defined and limited by the subsequent part of the sentence, 'this * * * support or maintenance.' Payment to the life tenant

is thus authorized for accident, illness, support and maintenance. The first two contingencies, accident and illness, hem in the life tenant's power to invade. Commissioner of Int. Rev. v. Wells Fargo B. & U. Tr. Co., 9 Cir., 145 F.2d 130; Commissioner of Int. Revenue v. Bank of America, etc., 9 Cir., 133 F.2d 753. It remains to determine the extent, if any, to which 'support or maintenance' supply a standard."

and held, "Since the possibility of invasion is remote, and we hold that the will provides a sufficient standard fixed and measurable in terms of money, it follows that the charitable remainder is deductible in full."

In the instant case, the language under scrutiny is: "accident, sickness, or other emergency or unusual condition of any kind."

■ The court agrees with the plaintiff's contention that the terms "accident and sickness" are objective standards capable of being stated in terms of money, as held in Berry v. Kuhl, supra; that the words "or other emergency or unusual condition of any kind" set forth the same type of objective standards since the use of the word "other" to modify the words "emergency" and "unusual condition" means that these must be of the same type as "accident and sickness"; and that they provide objective standards capable of being stated in terms of money.

Plaintiff has submitted to the court supporting affidavits from which it appears that the life beneficiary, Herman Seipp, is seventy-one years of age and is in good physical condition; that in 1947 he established his own living revokable trust which, at the time of the death of Henrietta S. Seipp, contained assets of value of about $260,000.00 and from which, at that time, he was receiving income at an annual rate of about $9,-000.00; that at no time has it been necessary to invade the principal of said trust for the living or other expenses of said beneficiary who lives frugally and

does not spend all of the income from his own trust; and that he owns a home, free and clear of encumbrances, which he purchased in 1961 and which is conservatively valued at about $25,000 at this time.

It further appears from said affidavits that the market value of the assets of the residuary trust (the entire net income of which is to be paid to Herman Seipp so long as he lives) was $456,569.72 as of December 31, 1962; that it varies and was as high as $550,839.77 as of December 31, 1964.

■ The court concludes that in this case the language of the will itself sets up an ascertainable standard for the invasion of the corpus of the trust—limiting and circumscribing the extent to which the Trustee may invade and reduce the principal by expenditures therefrom on behalf of the beneficiary.

The will in this case vests no discretion in the beneficiary concerning whether the principal of the trust shall be invaded on his behalf, and the will does not set up such standards or conditions for invasion that the whims of the beneficiary might govern the extent of invasion and consequent reduction available to the charitable remainderman. It introduces no element of speculation.

The court further concludes that the possibility of invasion by the trustee of the principal of the residuary trust under the will of Henrietta S. Seipp, deceased, for the benefit of her brother, Herman Seipp, was, at the date of the death of said Henrietta S. Seipp, and still is, remote.

The deduction made by plaintiff Trustee from the value of the gross estate of the date-of-death value of the remainder interest in the residuary trust bequeathed to Shriners Hospital was proper under Section 2055 of the Internal Revenue Code, as amended.

Judgment will be entered granting plaintiff's motion for summary judgment and denying defendant's motion for summary judgment.