Victor G. **NARDI**, as Trustee of the Residuary Trust under the Will of Henrietta S. Seipp, Deceased, Plaintiff-Appellee,

v.

**UNITED STATES** of America, Defendant-Appellant.

No. 16171.

United States Court of Appeals Seventh Circuit.

Oct. 26, 1967.

Mitchell Rogovin, Asst. Atty. Gen., Tax Div., Karl Schmeidler, Atty., Dept. of Justice, Washington, D. C., Edward V. Hanrahan, U. S. Atty., Chicago, Ill., Lee A. Jackson, David O. Walter, Attys., Dept. of Justice, Washington, D. C., for appellant.

Robert A. Downing, Ira D. Schultz, Maurice J. Miller, Chicago, Ill., Sidley & Austin, Chicago, Ill., of counsel, for appellee.

Before SCHNACKENBERG, CASTLE and FAIRCHILD, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

The United States, defendant, has appealed from a judgment order against defendant, entered by the district court on December 30, 1966 for $100,462.96, plus interest, in favor of plaintiff, Victor G. Nardi, as trustee of the residuary trust under the will of Henrietta S. Seipp, deceased.[1] Taxpayer and defendant had each filed a motion for summary judgment.

Henrietta S. Seipp died testate on December 23, 1960, a resident of Illinois, leaving the residue of her estate at her death, in trust, with a life estate to her brother, Herman Seipp, and the remainder to the Shriners Hospital for Crippled Children in Chicago, an admittedly charitable donee. In her will she gave the trustee certain powers to invade the trust corpus for the benefit of her brother. Article VIII of the will provided:

I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal or mixed, of every kind and nature, wheresoever situated, of which I may have been seized or possessed and to which I may be entitled at the time of my decease (including any and all legacies and bequests hereinbefore set forth which

---

1. Herein referred to as "Taxpayer".

may have lapsed or failed by reason of the death of the legatee prior to my decease) to Victor G. Nardi, of Chicago, Illinois, (hereinafter for convenience called "TRUSTEE"), as Trustee, to have and to hold the same for and upon the following trusts, purposes and conditions, to-wit:

\* \* \* \* \* \*

Paragraph 3—The entire net income from the trust estate, commencing at the time of my death, shall be paid to my brother Herman Seipp in convenient installments so long as he lives.

Paragraph 4—If, because of accident, sickness, or other emergency or unusual condition of any kind, my said brother shall be in need of extra funds, then Trustee shall pay to him for his benefit, for such purpose, such sum or sums from the principal of the trust fund as the TRUSTEE shall deem necessary therefor, and the judgment and determination of the TRUSTEE as to the necessity and amount of such payment shall be conclusive.

Paragraph 5—Upon the death of my said brother Herman Seipp, the TRUSTEE shall, as quickly as may be reasonably possible, pay over and deliver to the Shriners Hospital for Crippled Children, 2211 North Oak Park Avenue, Chicago, Illinois, the entire trust estate then remaining in his hands.

Taxpayer claimed a deduction for the present value of the remainder interest left in trust to the hospital, and determined that the net taxable estate was $140,634.19 and the net estate tax payable was $31,675.02, which he paid with his return. The Commissioner determined that the remainder interest to the hospital did not qualify for a charitable deduction under § 2055 of the Internal Revenue Code of 1954 (26 U.S.C. 1964 ed., § 2055) and in January, 1965 assessed a deficiency in estate tax and interest in the amount of $102,811.43. Taxpayer paid the deficiency and filed a timely claim for refund of $100,462.96.

At the time of decedent's death in December, 1960, Herman Seipp was approximately 66 years of age. He had established an *inter vivos* revocable trust in 1951, which had a market value on September 23, 1960 of $259,004 and which earned $9,533.98 of income during that year. Both the value of the trust corpus and the annual amount of income earned by the trust have increased from 1960 to 1966.

Herman Seipp purchased a home in 1961 for $19,700, which is free and clear of any mortgage and is presently worth approximately $25,000 and he spent over $10,000 for furniture and fixtures for the home. He is in good physical condition, lives frugally and has not invaded the principal of his trust for living and other expenses.

The court held that the language of the will contains an ascertainable standard by which the bequest of the remainder to the hospital can be presently ascertained and that, at the time of decedent's death, the probability of invasion by the trustee for the benefit of her brother was remote. Accordingly, the court held that the taxpayer was entitled to a deduction for the present value of the remainder interest to the hospital.

1. The theory of the defendant is that § 2055 of the Internal Revenue Code of 1954 allows a deduction from the gross estate of the value of a bequest to a charitable organization. If the decedent has left an amount in trust with a life estate to a noncharity and the remainder to a charitable organization and has given the trustee power to invade the trust corpus for the benefit of the life beneficiary, the estate may be entitled to a charitable deduction if, at the time of the decedent's death, the possibility that any portion of the corpus will be paid to the life beneficiary is so remote as to be negligible. Thus, the value of the charitable remainder may be deducted only if the will limits the trustee's power to invade the trust corpus by an objective standard which fixes the condition under which the minimum amount which ultimately will pass to the charity and the amount

which ultimately will go to charity may be readily ascertained. If such a standard is not set forth in the will, the estate is not entitled to a charitable deduction since it is impossible to determine accurately what amount is likely to pass to the charitable organization. Moreover, if the will or trust does not meet the required standard, evidence of other facts may not be considered in determining whether the probability of an invasion of the corpus is sufficiently remote. Even though there may be little likelihood that the trustee will invade principal to confer additional benefits upon the life tenant, nevertheless he has the power to do so under the will.

Defendant contends that in the present case the decedent left a life interest in trust for her brother and the remainder to a charitable hospital, and that she gave the trustee power to invade the corpus for the benefit of her brother "because of accident, sickness, or other emergency or unusual condition of any kind * * * [which causes him to], be in need of extra funds."

It is the defendant's position that this provision does not contain a sufficiently objective standard whereby the maximum amount payable to the brother can be readily ascertained and the remainder to charity is capable of being valued in terms of money. Thus the defendant says the court erred in holding that, "even if the trustee's power to invade the corpus is not limited to support, nevertheless the broad powers contained in the will comply with the proper standards".

2. Defendant relies on Merchants Nat. Bank of Boston v. Commissioner of Internal Revenue, 320 U.S. 256, 257–258, 64 S.Ct. 108, 88 L.Ed. 35 (1943), where the trustee was authorized to invade the corpus for certain purposes and the court stated, at 259, 64 S.Ct. at 110, that the case "turns on whether the bequests to the charities have, as of the testator's death, a 'presently ascertainable' value or, put another way, on whether, as of that time, the extent to which the widow would divert the corpus from the chari-

ties could be measured accurately", and at 262, 64 S.Ct. at 112, "The salient fact is that the purposes for which the widow could, and might wish to have the funds spent do not lend themselves to reliable prediction".

Defendant also relies on Henslee v. Union Planters National Bank, 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259, where a testamentary trust authorized the trustees "to use and expend in their discretion any portion of my estate, either income or principal, for the pleasure, comfort and welfare of my mother." The balance of the estate, after payment of certain legacies was left to charity. In *Henslee,* the court, in denying any deduction for the value of the charities remainder, said, *inter alia,* at 599, 69 S.Ct. at 292, " 'that the purposes for which the widow could and might wish to have the funds spent do not lend themselves to reliable prediction.' " In *Henslee,* the court had made it clear that it was irrelevant that at the testatrix's death her mother was 85 years old, lived on substantially less than the income from the trust directed to be paid to her, and had substantial investments of her own.

Defendant also relies on Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S. Ct. 291, 73 L.Ed. 647, where testator gave the residue of his estate in trust to his wife for life with authority to use from the principal any sum " * * * 'that may be necessary to suitably maintain her in as much comfort as she now enjoys.' " The remainder interest was left to certain charities after his wife's death. The court held, at 154, 49 S.Ct. at 291, that a power of invasion for the life tenant's maintenance was "fixed in fact and capable of being stated in definite terms of money", and allowed a deduction for the value of the charitable remainder.

Defendant concludes that in the present case decedent gave the trustee power to invade the corpus and used language containing the disjunctive clause "or unusual condition of any kind", which is a broad term not limited to an "accident" or "illness". Moreover, defendant urges that decedent made clear her primary

interest was to provide for her brother when she included language giving the trustee broad to invade the corpus if "her brother shall be in need of extra funds".

However, we have the benefit of our own decision in Berry v. Kuhl, 7 Cir., 174 F.2d 565 (1949), which involved a similar question. The will of Earl E. Berry, deceased, contained the following provision:

"Sixth: If by reason of accident, illness or other cause, either Wilma E. Berry or Martha Berry Datus requires funds for this treatment, support, support or maintenance, I request that the court having jurisdiction of the trust created under this will authorize my trustee to pay to either of them such portion of the principal of the trust fund as the court deems advisable, not exceeding the sum of Five Thousand Dollars ($5,000.00) in any one year."

When Berry's executrix filed a federal estate tax return claiming a deduction for charitable purposes, the Commissioner of Internal Revenue disallowed a portion of the deduction claimed and assessed a deficiency, which plaintiff paid and successfully brought suit to recover it, plus interest. On appeal, we said in part, at 567:

" * * * The charitable interest is deductible in full where the power of the private beneficiary to invade the corpus is limited by a standard fixed by the terms of the will and capable of being stated in terms of money, and where the circumstances of the private beneficiary indicate that the possibility of invasion is so remote as to be negligible. * * *"

and, at 568:

" * * * A more justifiable construction is that the testator intended the plaintiff to enjoy for her life at least the standard of living she enjoyed at the time of his death, and to permit recourse to the trust principal only in the event the return from her own large estate, as well as the income of the trust dwindled until that living standard could no longer be maintained therefrom. * * *

"Since the possibility of invasion is remote, and we hold that the will provides a sufficient standard fixed and measurable in terms of money, it follows that the charitable remainder is deductible in full. * * *"

This Berry v. Kuhl holding supports the theory of plaintiff's counsel here that—

"The operative words of the Will of Henrietta S. Seipp are, 'accident, sickness, or other emergency or unusual condition of any kind.' * * * The words 'or other emergency or unusual condition of any kind' set forth the same type of objective standards since the use of the word 'other' to modify the words 'emergency' and 'unusual condition' means that these conditions must be of the same character as accident and sickness; they provide the Trustee with ascertainable objective standards capable of being stated in terms of money. That the phrase 'other emergency or unusual condition of any kind' refers to conditions of the same character as accident and sickness is further supported by the fact that the Trustee is authorized to invade principal only 'for such purpose'. * * *"

*Berry* was followed recently by the Second Circuit in Salisbury v. United States, 377 F.2d 700 (1967), where at 703, the court recognized the rules laid down in *Ithaca Trust Co.* and *Henslee*, supra. *Salisbury* rejected the government's contention that the beneficiary could, in the event of his incapacity, utilize the corpus to spend his remaining days in luxury far beyond his previous standard of living. Likewise rejected was the government's argument that the provision for invasion of corpus for the beneficiary's support, care and benefit if he should become incapacitated from age, illness or other cause, is so broad as to permit the beneficiary to enjoy the corpus by merely

choosing to incapacitate himself. In so doing, the court said, at 708:

"* * * The phrase 'other cause' would ordinarily refer only to extrinsic causative factors such as illness or old age, and is defined and limited further by its subsequent context, see Berry v. Kuhl, supra, 174 F.2d at 568. * *"

The factual similarities between the present appeal and *Berry* are significant. Among examples thereof are the following facts:

1. Both life tenants were at the date of testator's death financially independent.
2. At the death of decedents, both life tenants were elderly. Wilma Berry was 52 years of age, and Herman Seipp in the case at bar was 66 years old.

For these reasons, the judgment order from which this appeal was taken is affirmed.

Judgment order affirmed.