**In re ESTATE of Margaret Duer JUDGE, Deceased.**

**Mildred M. JUDGE and Frank Kelley, Executors, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 72–59.**

United States District Court,
M. D. Pennsylvania.

Jan. 11, 1974.

Joseph C. Kreder, Warren, Hill, Henkelman & McMenamin, Scranton, Pa., for plaintiffs.

S. John Cottone, U. S. Atty., Scranton, Pa., Scott P. Crampton, Asst. Atty. Gen., Donald R. Anderson, Robert J. Hipple, Attys., Dept. of Justice, Washington, D. C., for the Government.

SHERIDAN, Chief Judge.

In this action to recover estate taxes alleged to have been erroneously and illegally collected, the issue is whether the value of the remainder interest to charity in the residuary trust created by the will of Margaret Duer Judge was de-

ductible under Section 2055 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 2055. Specifically, the questions presented are: (1) whether the will provides a sufficiently definite standard limiting the extent of possible invasion for the benefit of non-charitable interests so that the value of the charitable remainder was "presently ascertainable" at the time of the testator's death; and if so, (2) whether the possibility that the charity would not take was so remote, at least as to a calculable portion of the corpus remainder, as to be negligible. The taxpayer is entitled to the charitable deduction only if both questions can be answered affirmatively. Ithaca Trust Co. v. United States, 1929, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647; Merchants National Bank v. Commissioner, 1943, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35; Henslee v. Union Planters Bank, 1949, 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259; Zentmayer's Estate v. Commissioner, 3 Cir. 1964, 336 F.2d

488; Berry v. Kuhl, 7 Cir. 1949, 174 F. 2d 565; Mercantile-Safe Deposit and Trust Co. v. United States, D.Md.1966, 252 F.Supp. 191; Kline v. United States, N.D.W.Va.1962, 202 F.Supp. 849.

Margaret Duer Judge died testate on December 9, 1964, and the plaintiffs are the duly qualified executors of her estate. The estate tax return was filed in March 1966. The estate claimed a charitable deduction of $182,213.27 as the value of the charitable remainder interest of the trust created under Item XX of the will of the decedent. Upon audit, the charitable deduction was disallowed and a deficiency in estate tax of $38,759.57 was assessed and paid in March of 1969, together with interest of $7,008.58. A claim for refund in the amount of $45,768.15 was timely filed in February 1971, the refund claim was denied in November 1971, and the instant suit was subsequently filed.

Item XX[1] of decedent's will established a trust of the entire residue of

I.

"ITEM XX

"All the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever kind and wheresoever situate, which I may own or have the right to dispose of at the time of my decease, I give, devise and bequeath to Northeastern Pennsylvania National Bank & Trust Company of Scranton, Pennsylvania, in trust, nevertheless, to receive the rents, issues, incomes and profits thereof and pay the net income therefrom in monthly installments of not less than Five Hundred Dollars ($500.00) per month to my daughter, Mildred M. Judge, for the term of her natural life. In the even [sic] that the income derived from the corpus of my estate does not allow the payment monthly of the sum of Five Hundred Dollars ($500.00) to my said daughter, Mildred M. Judge, then I direct the Trustee to withdraw and pay over and out of the corpus of this trust such a sum or sums monthly as may be required, in addition to income, to pay unto my daughter, Mildred M. Judge, the said sum of Five Hundred Dollars ($500.00) each month for and during the term of her natural life, even though the encroachment upon the corpus of said trust for said purpose may entirely consume the same if need be. I further direct that my Trustee shall pay from the corpus of this trust all medical, hospital and nursing bills incurred by my daughter, Mildred M. Judge. The purpose of the income and

other beneficial interest intended to be created by this trust is to secure my daughter, Mildred M. Judge, from want and to insure her a reasonable living, so far as possible, under all circumstances, free from accident of mismanagement or improvidence, and free from the interest of any future husband. Neither the corpus or the income of the trust herein created shall be liable for the debts of Mildred M. Judge, nor shall the same be subject to seizure of any creditor of Mildred M. Judge, under any writ or proceeding at law or in equity, and Mildred M. Judge shall have no power to sell, assign, transfer, encumber and in any other manner to dispose of her interest in said trust or the income produced thereby.

"On the death of my daughter, Mildred M. Judge, the remaining principal and any undistributed and accumulated income of the trust shall be paid over in full, free from the said trust, unto the following, share and share alike, to be used by them for foreign missionary work in India, Africa, the Phillipine Islands, and South America:

"(a) The Holy Cross Missions of Washington 17, District of Columbia, for its corporate uses and purposes.

"(b) The Passionist Order of the Roman Catholic Church, St. Ann's Monastery, West Scranton, Pennsylvania.

"(c) The St. Anthony's Guild of Paterson, of 508 Marshall Street, Paterson, New Jersey, for its corporate uses and purposes."

her estate the gross amount of which was approximately $286,423. Item XX provides that the entire net income therefrom is to be paid to Mildred M. Judge, the daughter of the testatrix, for life and in the event that the income derived from the residue is insufficient to provide a monthly payment of $500 to the life beneficiary, the trustee is directed to invade the corpus to the extent necessary to provide such a monthly payment. In addition, the trustee is directed to pay from corpus all medical, hospital and nursing expenses incurred by the life beneficiary. The age of the life tenant, Mildred M. Judge, at the time of the death of the testatrix was 61.

This case is governed by Section 2055 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 2055, which provides that for purposes of the estate tax, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies and devises to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, and all testamentary transfers to trustees for such purpose, with certain provisions and limitations not relevant to this case.[2] Section 2055 of the 1954 Code is essentially the same as Section 812(d) of the 1939 Code, which was involved in many of the cases cited herein. Both the taxpayer and the government agree in the stipulation of facts that the named remaindermen are charitable organizations as defined in Section 2055 of the Code.

Treasury Regulations on Estate Tax (1954 Code), Section 20.2055–2, which has the effect of law,[3] states the requirements for a charitable deduction when a trust is created for both a charitable and a private purpose. The material provisions are as follows:

"(a) Remainders and Similar Interests. If a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest.

.    .    .    .    .    .

"(b) Transfers Subject to a Condition or a Power. If, as of the date of a decedent's death, a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible. If an estate or interest has passed to or is vested in charity at the time of a decedent's death and the estate would be defeated by the performance of some act or the happening of some event, the occurrence of which appeared to have been highly improbable at the time of the decedent's death, the deduction is allowable. If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, the deduction will be limited to that portion, if any, of the property or fund

2. Under the Tax Reform Act of 1969, P.L. 91–172, 83 Stat. 487, a charitable remainder interest passing under a will executed after October 9, 1969, from a decedent dying after December 31, 1969, is not deductible unless the trust qualifies as an annuity trust or a unitrust. See Section 201(d), (e) and (g) of the Tax Reform Act of 1969. However, in the instant case, the law as it existed prior to the Tax Reform Act is applicable.

3. Commissioner v. Sternberger's Estate, 1955, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246; Mercantile-Safe Deposit and Trust Co. v. United States, D.Md.1966, 252 F.Supp. 191; Bowers v. South Carolina National Bank of Greenville, 4 Cir. 1955, 228 F.2d 4; Moffett's Estate v. Commissioner, 4 Cir. 1959, 269 F.2d 738.

which is exempt from an exercise of the power. . . ."

These provisions are essentially the same as Sections 81.44 and 81.46 of Treasury Regulation 105, which dealt with the 1939 Code and were involved in many of the cases cited herein.

■ The first question is whether the trustee's power of invasion was limited by an ascertainable standard so that the charitable bequest, as of the testatrix's death, had a presently ascertainable value, or put another way, whether Item XX of decedent's will provides a sufficiently definite standard limiting the extent of possible invasion for the benefit of noncharitable interests. Under Item XX, the first power to invade corpus given the trustee is the one which directs it to invade the corpus to the extent the trust income is insufficient to pay the life tenant $500 per month. Both parties agree that this constitutes an ascertainable standard and the courts have so held. Bowers v. South Carolina National Bank of Greenville, 4 Cir. 1955, 228 F.2d 4; Estate of Helen Stow Duker, 1952, 18 T.C. 887. Item XX further provides that the trustee shall pay from the corpus all medical, hospital and nursing bills incurred by the life tenant, Mildred M. Judge. There is no doubt that this also constitutes an ascertainable standard. The Internal Revenue Service has ruled that a power of invasion to pay hospital and medical expenses is an ascertainable standard. Rev.Rul. 54–285, 1954–2 Cum.Bull. 302; Rev.Rul. 70–450, 1970–2 Cum.Bull. 195. And the courts have consistently held that the power to invade for such purposes constitutes a sufficiently definite standard "fixed in fact and capable of being stated in definite terms of money." Ithaca Trust Co. v. United States, 1929, 279 U.S. 151, 49 S. Ct. 291, 73 L.Ed. 647. For example, the courts have held that the standard is ascertainable where the will permits invasion for the beneficiary's "comfort and welfare," Blodget v. Delaney, 1 Cir. 1953, 201 F.2d 589; for support, care, and benefit of income beneficiary during incapacitation due to illness, age or other cause, Salisbury v. United States, 2 Cir. 1967, 377 F.2d 700; for "accident, sickness or other emergency or unusual condition of any kind," Nardi v. United States, 7 Cir. 1967, 385 F.2d 343; for "the upkeep of the homeplace and all necessary medical and hospital expenses in the case of the illness of either or both of the testator's sisters," Bowers v. South Carolina National Bank of Greenville, 4 Cir. 1955, 228 F.2d 4; to pay the life tenant a sum not exceeding $5,000 in any one year if "by reason of accident, illness or other cause" she "requires funds for this treatment, support or maintenance," Berry v. Kuhl, 7 Cir. 1949, 174 F.2d 565; for "sickness, accident, want or other emergency," Commissioner v. Wells Fargo Bank and Union Trust Co., 9 Cir. 1944, 145 F.2d 130; if life beneficiary's income from all sources was insufficient to provide her with the best medical, hospital or nursing care or treatment in case of sickness, trustee should apply such part of principal as in his absolute discretion he should deem necessary, Mercantile-Safe Deposit and Trust Co. v. United States, D.Md.1966, 252 F.Supp. 191; for "emergency, illness or necessity," Estate of Oliver Lee, 1957, 28 T.C. 1259.

However, the mere fact that Item XX fixes measurable limits on the power of invasion is not sufficient to justify the claimed deduction. Having concluded that the authorized invasion of corpus is limited by a presently ascertainable standard, ". . . it becomes necessary to examine the remoteness of invasion, or the extent of possible invasion, in terms of the standard, to determine the likelihood that the charity will take and the value of what it will receive." Newton Trust Co. v. Commissioner, 1 Cir. 1947, 160 F.2d 175, 178–79; see Lincoln Rochester Trust Co. v. Commissioner, 2 Cir. 1950, 181 F.2d 424, 427; Bowers v. South Carolina National Bank of Greenville, supra. It must appear as of the date of testator's death that the possibility of invasion of the charitable bequest, with its consequent diversion of

corpus from the charitable donee, is so remote as to be negligible. Newton Trust Co. v. Commissioner, supra; Berry v. Kuhl, supra; Estate of Russell Harrison Varian, 1966, 47 T.C. 34, aff'd, 9 Cir. 1968, 396 F.2d 753, cert. denied, 1968, 393 U.S. 962, 89 S.Ct. 402, 21 L. Ed.2d 376; Estate of Abraham L. Buckwalter, 1966, 46 T.C. 805.

The "possibility so remote as to be negligible" test has been held to mean that the charitable deduction is allowable only if the chance that the charitable transfer will not become effective is the kind of chance which persons generally would disregard as so highly improbable that it might be ignored with reasonable safety in undertaking a serious business transaction. Hamilton National Bank of Chattanooga v. United States, E.D. Tenn.1965, 236 F.Supp. 1005, aff'd, 6 Cir. 1966, 367 F.2d 554. It is a possibility which every dictate of reason and common sense would justify an intelligent person in disregarding as so highly improbable and remote as to be ignored as lacking in reason and substance. Hamilton National Bank of Chattanooga v. United States, supra.

The question of remoteness is a factual one. Some invasion of the corpus of the residuary trust is certain in that Item XX requires the trustee to pay from corpus all medical, hospital and nursing expenses of the life tenant. The taxpayer asserts that a point beyond which any possibility of further invasion of corpus would be so remote as to be negligible can be computed with reasonable accuracy. As to the portion of the corpus as to which the possibility of invasion is remote, the taxpayer claims a charitable deduction. The government would have the court deny any deduction on the basis that since the possibility of invasion of some of the corpus is not remote—in fact is a certainty—no deduction is allowable for any portion of the corpus.

The remoteness test is utilized in order to determine the likelihood that the charity will take and the value of what it will receive. Newton Trust Co. v. Commissioner, 1947, 160 F.2d at 178–179. Therefore, if it were factually shown that the possibility of invasion of the corpus beyond a certain amount was so remote as to be negligible and the value of the charitable bequest was then determinable, the remoteness test would be met and a charitable deduction allowable. If it is proven that, beyond a certain amount of the corpus the possibility of invasion of the remaining portion is so remote as to be negligible, the purpose of the remoteness test of assuring that the amount of the charitable deduction is no greater than the amount which the charity does in fact eventually receive will have been satisfied. In Estate of Sol Schildkraut v. Commissioner, 2 Cir. 1966, 368 F.2d 40, cert. denied, 1967, 386 U.S. 959, 87 S.Ct. 1028, 18 L. Ed.2d 107, the court allowed a charitable deduction as to a calculable portion of the trust corpus. There the decedent had placed $300,000 in trust. The trustees were directed to pay decedent's wife $1,000 a month as long as she lived, such amount to be made up out of principal to the extent the trust income was insufficient. Any excess income was to be paid to a charity. In addition, the trustees were directed to pay out of the trust corpus any federal or state income taxes on any sums paid to the widow from the trust, and also to pay out of the corpus the real estate taxes on the Florida real estate given to decedent's wife so long as she continued to own it. On the wife's death, the remaining corpus was to go to a charity. The court allowed a charitable deduction as to a calculable portion of the trust corpus, despite the large projected invasion thereof. In allowing the deduction the court stated:

> "We feel that the proper test here is whether there is an interest that is 'presently ascertainable' . . . and 'assurance,' . . . that the Foundation [the charity] will receive it."

Estate of Schildkraut v. Commissioner, 2 Cir. 1966, 368 F.2d at 48.[4]

The present case was submitted to the court on a stipulation of facts. In order to determine whether there is a portion of the corpus as to which the possibility of invasion is so remote as to be negligible, the taxpayer would have to prove the amount of medical, hospital and nursing expenses which will be incurred by the life tenant Mildred M. Judge over the remaining period of her life. It is at this point that the plaintiff has failed to carry its burden of proof. While it is true plaintiff has presented evidence as to the amount paid out of principal to the life tenant for medical expenses for the years 1965 through 1971 and that the plaintiff has suggested to the court amounts varying from $2,500 to $5,000 as the maximum amount of medical expenses which the life tenant will incur each year of her remaining life, the court cannot conclude on the basis of the evidence presented that the maximum amount which will be utilized for medical expenses can be calculated with reasonable accuracy. Any such calculation would be unsupported by the record and hence arbitrary and speculative. Therefore, on the basis of the stipulation of facts submitted by the parties, the court cannot conclude that the possibility of invasion as to any calculable portion of the corpus was so remote as to be negligible. A charitable deduction cannot be allowed for a charitable remainder unless its amount can be determined with reasonable certainty as of the time of testator's death. The taxpayer having failed to sustain its burden of proof, the charitable deduction was properly disallowed and the claim for estate tax refund is denied.

---

4. It should be noted that the *Schildkraut* case asserts that this test instead of the "so remote as to be negligible" test is applicable in these circumstances. This court believes that the test enumerated in *Schildkraut* in effect states the underlying purpose of the remoteness test and is not inconsistent therewith.